**CARPENTER et al. v. UNITED STATES.**
Nos. 11625 to 11631.

Circuit Court of Appeals, Eighth Circuit.
July 16, 1940.

Rehearing Denied in No. 11630, Aug. 2, 1940.

C. I. McNutt, of Des Moines, Iowa (John Connolly, Jr., of Des Moines, Iowa, on the brief), for appellant Francis Darrell Quinn.

· David D. Weinberg, of Omaha, Neb. (Louis T. Carnazzo, of Omaha, Neb., for appellants Howard William Fouts, Ralph Henry Johnson, and Shaun McGillan Maloney; and C. I. McNutt and John Connolly, Jr., both of Des Moines, Iowa, for appellant Francis Darrell Quinn, on the main brief), for appellants Earl Carpenter, Louis Miller, and Walter Karl Stultz.

William B. Danforth, Asst. U. S. Atty., of Mason City, Iowa (Edward G. Dunn, U. S. Atty., of Mason City, Iowa, on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

WOODROUGH, Circuit Judge.

The appellants, Earl Carpenter, Howard Fouts, Ralph Johnson, Louis Miller, Walter Stultz, Francis Quinn and Shaun Maloney, were convicted and sentenced on four counts of an indictment containing five counts. Their appeals have been consolidated and heard together on one record.

Count one of the indictment charged transportation of a motor vehicle in interstate commerce, knowing the same to have been stolen, in violation of 18 U.S.C.A. § 408. Count two charged the defendants with obtaining, by means of force, violence and coercion, a truck belonging to the Metz Baking Company of Sioux City, Iowa, and then moving in interstate commerce in the possession of an employee of the Metz Company (this count was drawn in the language of 18 U.S.C.A. § 420a, but was held by the trial court to allege a violation of 18 U.S. C.A. § 409). Count three charged a conspiracy to violate 18 U.S.C.A. § 420a, in violation of 18 U.S.C.A. § 88. Count four charged that in violation of 18 U.S.C.A. § 88, the defendants conspired to violate 18 U.S.C.A. § 409, in that they combined and agreed to steal and carry away, with intent to convert to their own use, bakery products contained in trucks moving as and constituting interstate shipments from the State of Minnesota to the State of Iowa. Certain overt acts in furtherance of and to effect the object of the conspiracy were alleged in this count. Count five charged possession of goods stolen from an interstate shipment, knowing the same to have been stolen, in violation of 18 U.S.C.A. § 409. On its own motion, the trial court quashed count three, and the cause proceeded to trial on counts one, two, four and five. The jury returned a verdict of guilty against all the defendants on each of the four counts. A general sentence of two years in the penitentiary under all counts was imposed upon each of the defendants.

On this appeal we give consideration first to the judgment of conviction upon the first count of the indictment. That count charged the several defendants with violation of 18 U.S.C.A. § 408, which denounces the interstate transportation of a stolen motor vehicle, knowing the same to have been stolen. The count did not specify the particular part taken by each defendant in the stealing and transporting of the vehicle, but all were indicted as principals who aided and abetted in the commission of the offense.

The points argued for reversal relate to (1) denial of motion for directed verdict, (2) admission of testimony given by the government witness Omer Foster, (3) admission of the government's Exhibit "C", (4) denial of continuance to defendant Carpenter.

(1) A motion for directed verdict made by all defendants at the conclusion of all the evidence was denied by the court and the ruling is assigned as error. It is argued that the evidence was insufficient to sustain the verdict. The record discloses that all of the defendants, with the exception of the defendant Quinn, who did not testify, gave their testimony to the effect that they had in no way participated in the crime charged and they sought to establish ali-

bis. They also introduced testimony to impeach the government witness Omer Foster. The government's evidence is fully and accurately reviewed by the trial court in its instructions to the jury as follows:

"The United States as prosecutor in this case has offered and introduced evidence tending to show that on or about the 26th and 27th of July, 1938, Metz Brothers Baking Company was a corporation, with place of business in Sioux City, Iowa, engaged in baking, merchandising and distributing bread and other bakery products with branches or distributing stations in the States of Iowa, Minnesota and South Dakota, and in the course of its business maintained and operated trucks for the purpose of and engaged in transporting bread and other bakery products in interstate commerce between points in said several States and particularly from the town of Worthington in the State of Minnesota, to the town of Sanborn in the State of Iowa. That at the time mentioned there was in effect a truck drivers strike inaugurated and maintained by members of organized labor at Sioux City and in the territory served by Metz Brothers Baking Company, which strike affected the operation of the trucks maintained and operated by Metz Brothers Baking Company. That Metz Brothers Baking Company at the time notwithstanding said strike, was operating its trucks, and for that reason was being treated as unfair to organized labor by truckers' unions affected and truckers' local union at Sioux City, No. 383.

"That at said time the defendant, Shaun McGillan Maloney, was an employee and organizer for said local union No. 383. That on the late afternoon or evening of July 26, 1938, the said Maloney in company with one Omer Foster, then an official of said local union, left Sioux City in a certain Pontiac sedan car, together with the defendant, Howard William Fouts, and the defendant, Ralph Henry Johnson, destined for a meeting at Arnolds Park in Dickinson County, Iowa, with other members of organized labor. That Maloney and his said companions drove northeasterly through various towns including Milford, in Dickinson County, where they stopped at an oil station, and then continued on to the place known as Nate's Night Club at Arnolds Park, where they met some 10 or 11 additional men, among whom were Earl Carpenter, Louis Miller, Walter Karl Stultz and Francis Darrell Quinn. That after partaking of sandwiches and other refreshments at the suggestion of Maloney who was acting as leader of the meeting and conference, the entire group of some 14 or 15 men left Nate's Night Club at Arnolds Park and proceeded in automobiles to a point approximately 9 miles northwesterly from Arnolds Park, where they stopped upon a side road and held a conference, the defendant Maloney addressing the other members of the group there assembled; that Maloney at that time and place undertook to explain to the other men present the purpose of their meeting and the object of that night's activities. That Maloney explained his arrangement and plan to be that those present would divide themselves into several groups and proceed to points on certain highways leading in different directions from the town of Worthington in the State of Minnesota. One of which highways was U. S. Highway No. 59, leading from the town of Worthington in the State of Minnesota, southerly to a point near the town of Sanborn in O'Brien County, Iowa. That later in the night or early morning one of Metz Brothers Baking Company's trucks would pass over that highway from Worthington, Minnesota, destined to Sanborn, Iowa, with products of the Metz Brothers Baking Company. That at that time and place, Maloney, as leader of said conference, ordered and directed that two automobiles with men should proceed to a point near the State line between Minnesota and Iowa on U. S. Highway No. 59, and there intercept, stop and seize the said truck of the Metz Brothers Baking Company, take the same from its driver and destroy the same with its contents; the said Maloney giving specific directions in substance to use all violence and force necessary to accomplish the object and purpose expressed. That all others present at the conference about 9 miles northwesterly from Arnolds Park, acquiesced in and approved the suggestions, orders and directions of said Maloney, and there entered into a conspiracy to carry out Maloney's suggestions and directions, and to proceed to the points in question, and particularly to a point near the Minnesota-Iowa line on U. S. Highway No. 59, and there seize

and destroy the truck expected to be intercepted near that point. That of the group assembled at this point of alleged conspiracy, some men were from Sioux City, some from Omaha, some from Des Moines, and some from Minneapolis. That in pursuance of Maloney's suggestions and directions the defendants, Carpenter, Fouts, Johnson, Miller, Stultz and Quinn, and another not a defendant, entered two cars, one being a Pontiac sedan from Omaha, and the other being a Des Moines car, in which the defendant, Francis Darrell Quinn, rode. · That these two cars, with their companions, proceeded northwesterly toward the point designated by Maloney, and that Maloney and the said Foster in another car returned from that point to Sioux City. That this meeting on the side road at which such conspiracy was formed, took place between 2 or 3 o'clock of the morning of July 27, 1938; that about an hour or an hour and a quarter later a truck belonging to Metz Brothers Baking Company and being driven by one Willard Swatosh loaded with bread and other bakery products destined from the town of Worthington in the State of Minnesota,' to the town of Sanborn in the State of Iowa, arrived at a point where¡U. S. Highway No. 59 intersects an East and West highway laid out and constructed upon the State line between Minnesota and Iowa. That as said truck and driver approached the junction of U. S. Highway No. 59 with the State line road, the driver of the truck observed an automobile driven across the highway and obstructing his passage; that a second car passed around and drove up behind his truck. That in the forward car were 4 men, and in the car that drove around behind the truck was one man, and 2 other men were on the ground. That one of the men on the ground, whom the driver, Swatosh, identifies as the defendant, Francis Darrell Quinn, came forward opened the door of the truck, and threatening with a blackjack, ordered Swatosh out of the truck. That Swatosh turned off his motor and got out of the truck, whereupon Quinn still threatening him with the blackjack urged him southward over the highway and through a fence and through a field, commanding him to be gone and not look back. That Swatosh while going through such field heard the motor of the truck start and run for a short time; and a little later perceived

smoke and evidence of fire. That Swatosh then proceeded to a farm house, nearby, to give alarm, and with a companion from the farm house, proceeded to another farm to obtain access to a telephone to alarm the authorities. That when Swatosh and his companion later returned to the scene near the highway junction they discovered the truck in question in flames; but the other automobiles and their occupants gone. That the burning truck was in the ditch on the south side of the State line highway and upon Iowa soil with its contents. That Swatosh and his companion there discovered on the ground a wallet or billfold with contents, among which contents was a union card purported to have been issued to the defendant Fouts. That it had rained earlier in the night, and the road was still wet, but that the wallet or bill-fold at least upon the upper side was dry. That on the following morning at the Labor Temple in Sioux City, the said Foster conversed with some of the defendants who, he testifies, were in the conference at which the conspiracy was formed in Dickinson County, the night before, and that statements and admissions were made by such defendants consistent only with their familiarity with the scene of activity connected with the offenses committed at and near the junction of U. S. Highway No. 59, with the Minnesota-Iowa State line road that I have mentioned.

"Now, Gentlemen, this is in substance the contentions of the United States as prosecutor, and in substance the facts, circumstances and occurrences which the United States has offered testimony tending to prove."

█ It was clearly shown by the evidence that when the loaded bakery truck was taken from the possession of its owner it was in Minnesota, some thirty or forty feet north of the East and West highway constructed upon the state line between Minnesota and Iowa. From the place where it was seized it was moved across the state line into the ditch on the south side of the state line and upon Iowa soil and was there found in flames after the departure of the defendants. Such movements of the car from one state across the state line into another state, although short, undoubtedly constituted a transportation in interstate commerce, but appellants question the sufficiency of proof that

the truck was stolen. It was taken from the owner, as shown by the evidence, with the intent on the part of the defendants to destroy it, and the point argued for appellants is that when it was taken with that intent it was not stolen within the meaning of section 408. ·

In Abraham v. United States, 8 Cir., 15 F.2d 911, this court had under consideration the questioned sufficiency of the evidence there presented to show that an automobile transported in interstate commerce had been stolen within the meaning of 18 U.S.C.A. § 408. The court adopted the larceny statute of the state of Oklahoma, where the car was taken, as the test, and we follow the same course of interpretation in this case that we find indicated by the decision of our court in that case. The bakery truck was taken in the State of Minnesota, and Section 10358, 2 Mason Minnesota Statutes, 1927, provides as follows:

"Every person who, with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person—

"1. Shall take from the possession of the true owner, or of any other person, or obtain from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing, or secrete, withhold, or appropriate to his own use, or that of any person other than the true owner, any money, personal property, thing in action, evidence of debt, or contract, or article of value of any kind.
* * *

"Steals such property, and shall be guilty of larceny."

As there was substantial evidence in this case that the defendants took the bakery truck from the possession of the agent of the true owner with intent to deprive the true owner of its property, and so stole such property, and transported the vehicle in interstate commerce, knowing it to have been stolen, the motion for directed verdict was properly denied.

(2) Admission of testimony. The witness Omer Foster testified on behalf of the government that at the time the crime in question was committed he was a member of the executive board of the Local Truck Drivers' Union, No. 383, and was acquainted with all the defendants. He was not present at the commission of the crime of stealing and transporting the bakery truck, but testified that he was in company with the defendants when they planned and agreed to seize and destroy the bakery truck and when all of them except Maloney started off in two automobiles towards the place where the felonious acts were committed. He testified to what was said and done by the several defendants in his presence up to the time they left him to go upon their mission. Errors are assigned in respect to the admission of part of his testimony, to the effect that on the morning after the truck was burned he heard the defendant Howard Fouts "blowing [to the defendant Maloney] about how [defendant] Quinn run at this truck driver with a blackjack and some one told him it wasn't necessary to do that and so he didn't. That he [Howard Fouts] then looked back and it [the truck] was not burning very well, and so he ran back and broke the gas line and threw a match in it, and that he said 'Boys we sure had toast then' "; and further testimony of Omer Foster to the effect that he heard defendant Howard Fouts say to defendant Maloney at that time, "that he [Fouts] had lost his union book" at the scene of the burning of the truck and after Maloney had rebuked him for his carelessness Maloney said to him, "Don't talk no more about it, just forget all about the deal, just forget what happened."

■ This testimony given by Omer Foster was in the nature of an admission by Fouts and Maloney, made in the hearing of the witness, that they had aided and abetted as principals in the commission of the offense charged in the first count of the indictment; in other words, that they were guilty as charged in that count, and the testimony was manifestly competent against them. The admission was not related to any other defendant except the defendant Quinn, and therefore could not have prejudiced such others. They did not request the court to point out to the jury that the testimony could not be considered in passing upon the question of their guilt or innocence and are in no position to complain of its admission.

■ But the testimony of the witness Omer Foster that on the morning after the truck burning he heard defendant Fouts "blowing [to defendant Maloney] about how [defendant] Quinn run at the truck driver with a blackjack" was hearsay as to defendant Quinn, and in a sep-

arate brief on behalf of defendant Quinn it is strenuously urged that his conviction should be reversed on account of its admission. The record shows that the witness Foster, having stated that he heard a conversation between defendants Fouts and Maloney on the morning after the crime, was asked what the conversation was. The question was a proper question and the admissions made by Fouts and Maloney against themselves, given in answer to the question, were competent. The general objections to the question were properly overruled. When the answer was given, then, if defendant Quinn deemed himself prejudiced by the statement Fouts was said to have made about him, he should promptly have called the court's attention to it and requested the court's action in respect to it. But he made no such request then or when the court came to instruct the jury. It appears elsewhere in the record that on the night of the truck burning the witness Omer Foster had given the defendant Fouts a blackjack and Foster was permitted to give his testimony, apparently without objection and certainly without any motion to strike, that Fouts, on the morning after the crime, said that Quinn had got away with his blackjack. The truck driver Swatosh, in his testimony, identified the defendant Quinn as the man who commanded him to get off the truck on the night of the crime, and Swatosh also testified that Quinn was then waving a blackjack at him.

■ The witness Foster's statement as to Fouts' "blowing about" Quinn's action with the blackjack was therefore merely cumulative of the positive and convincing testimony given by the truck driver. The failure of Quinn to request any action by the court, or to obtain a direct ruling in respect to the answers given by the witness Foster, in response to proper questions, precludes us from reversing his conviction on this point. In Troutman v. United States, 10 Cir., 100 F.2d 628, 634, the court said: "Where two or more defendants charged with a crime are tried jointly evidence which is competent against either should be admitted, and it then becomes the duty of those desiring that it be limited to submit a proper instruction covering the subject. No instruction was tendered here in which any evidence was specified and the jury charged that it had relation to a particular defendant and could not be considered against others. In the absence of such a requested instruction there is no basis for complaint. Ball v. United States, 9 Cir., 147 F. 32; Schultz v. United States, 8 Cir., 200 F. 234; Moffatt v. United States, 8 Cir., 232 F. 522; People v. Haydon, 18 Cal.App. 543, 123 P. 1102, 1114; Quinn v. Van Raalte, 276 Mo. 71, 205 S.W. 59; Dendinger v. Martin, Tex.Civ.App., 221 S.W. 1095; Lanham v. Vesper-Buick Automobile Co., Mo.App., 21 S.W.2d 890."

■ ■ (3) The defendant Carpenter complains of the ruling of the court denying his motion for a continuance, filed by him on the day the cause was brought to trial against the seven defendants.

It appears from his verified motion that he had been a resident of California for the year prior to the trial; that he was presented before the United States Commissioner at Oakland, California, on October 23, 1939, for removal for trial under the indictment herein (which was filed September 27, 1939); that a warrant for his removal was issued on October 24, 1939; that he arrived at the place of trial, Sioux City, Iowa, on October 28, 1939, at which time his counsel first saw him; and that he was ordered to stand trial on October 30, 1939. It was alleged that neither he nor his counsel had time to prepare for his defense. But the record shows that this defendant was represented and defended by the same counsel who appeared for the other defendants, Stultz and Miller, and the defense of all of them was an alibi; that is, that all of them were attending a union meeting in Omaha, Nebraska, on the night when the truck was stolen and burned. The trial of the case extended over three days and Carpenter called five witnesses to testify on his behalf that they saw him at the meeting on the night in question. He also testified on his own behalf.

"An application for a continuance rests in the discretion of the court, and such discretion will not be interfered with except in case of an abuse thereof." Johnson v. United States, 8 Cir., 32 F.2d 127–129. No prejudice is shown to have been occasioned the defendant by the denial of the continuance and we find no abuse of discretion. Avery v. Alabama, 308 U.S. 444, loc.cit. 446, 60 S.Ct. 321, 84 L.Ed. 377.

■ (4) Admission of Exhibit "C". The record shows that Vernon Johnson, a witness called by the government, testified that he was at the junction of Highway 59

and the Iowa-Minnesota state line highway between half past four and five o'clock of the morning of July 27, 1938, and observed a Ford truck on fire. "The witness was then handed Exhibit 'C' and identified it as being the burning truck he had seen on the 27th day of July, 1938." He was cross-examined on several matters but not as to Exhibit "C", and "the government offered in evidence Exhibit 'C', being a picture of the truck while burning". Defendants objected to the receipt of the photograph in evidence generally and also on the ground that no foundation had been laid. The exhibit is a photograph picturing a burning truck in a ditch. It is earnestly argued that the court erred in receiving it in evidence. There are some figures noted on the back of the photograph which, it is argued, may indicate that the date when the photograph was taken was a date subsequent to the crime. It is also argued that the flames shown in the photograph may be "touched up". We are not impressed. That the truck was burned was proven beyond doubt by numerous witnesses, and whether the photograph pictured it exactly was of no importance. The testimony of the witness who identified the photograph was not controverted and we find no error in the court's ruling receiving the photograph in evidence.

The proof of guilt on the part of each of the defendants as to the first count of the indictment was in all respects sufficient, and their trial having been fair, impartial and without prejudicial error, no ground for reversal of the conviction on that count has been shown.

Much of the briefs of the appellants is devoted to argument of contentions in respect to the remaining counts of the indictment. The transactions upon which the first count was predicated were the same transactions to which the other counts were related. No testimony irrelevant to the charge in the first count, or in any wise prejudicial to defendants in their trial on that count, was introduced because of the pendency of the other counts.

As we find no error in the conviction and sentence upon the first count of the indict-

ment and the sentence imposed was such as might have been imposed under that count, we deem it unnecessary to discuss the other counts. Abram v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173.

Affirmed.