**J. T. LOTT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15648.**

United States Court of Appeals
Fifth Circuit.

March 14, 1956.

Writ of Certiorari Denied
May 28, 1956.

See 76 S.Ct. 848.

Frank W. Oliver, Chicago, Ill., for appellant.

Cavett S. Binion, Asst. U. S. Atty., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from a second trial of the appellant, John T. Lott on an indictment charging him in one count (along with Johnnie Lee Reed, Larry Pierce, Doris Jean Miller and Joe Melvin Shaw) with conspiring to sell and transfer, not in pursuance of a written order on a form provided for that purpose by the Secretary of the Treasury, certain unstamped narcotic drugs in violation of Sections 2553(a), 2554(a), 2591(a) and 2593(a) of 26 U.S.C.A., I.R.C.1939 [1]. The chief question before us here is whether the Court below erred in allowing a Fort Worth, Texas, City Detective, Herbert Hopkins, to testify as to alleged conversations by the co-conspirators overheard by him through a radio receiving set.

Much of the evidence in support of the Government's case was furnished by testimony of Floyd Watkins, a confessed narcotic addict and an informer or special agent for the Narcotics Bureau. He was substantially corroborated by those narcotics agents and city detectives who directed his purchases and other activities as a special employee. However, a large part of the appellant's case was an attempt to impeach Watkins by attacking his credibility and showing his unreliability and motives to fabricate.

The first count of the indictment charged seventeen overt acts as the basis of the conspiracy alleged. In several of these Lott was not connected; in others he was shown to have been present and actually to have participated in the transfer of dope. With respect to most of the overt acts, however, evidence of appellant's participation was circumstantial. In three instances it was shown that Lott's car was in the neighborhood where the transfer took place and circumstances indicated that he was there for the purpose of supplying and that he actually did supply his co-conspirators with the drugs which were sold on these occasions. Evidence of appellant's connection with four of the overt acts was through testimony of Watkins concerning conversations he had with co-conspirators named in the indictment, the statements of these co-conspirators being to the effect that John Lott was the source of the narcotics sold to Watkins. On these four occasions Watkins was furnished with a radio "bug" which was strapped to his body. Through this radio transmitter Detective Hopkins was able to hear the conversations which took place at the time of the sales, and was able to corroborate the testimony of Watkins.

The agents or officers recorded the radioed conversations, but technical imperfections made fruitless the attempt which was made to play the records for the jury. The detective was thereupon allowed to testify as to what he heard while monitoring the conversations.

Appellant contends, first that the Court committed reversible error in allowing Detective Hopkins to relate the contents of the conversations transmitted through the radio worn by Watkins and heard by him over the loud speaker. It was argued that this was inadmissible hearsay evidence since Hopkins could not, by his own knowledge, identify the voices heard by him.

■ Admissibility of incriminating statements by a defendant overheard by

1. A conviction of appellant on two counts of the same indictment was reversed by this Court because of prejudicial testimony by a Government witness concerning which the Government counsel had been warned, and certain unjustified remarks by the trial Court. Lott v. United States, 5 Cir., 1955, 218 F.2d 675. Before the commencement of the second trial, from which this appeal was taken, the trial Court dismissed the fourth count of the indictment which charged Lott with a substantive offense, and appellant was thereafter tried only upon the remaining conspiracy count.

a federal officer through radio equipment like that used here was approved in On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, and this point is not put in issue here. Both parties agree that a conviction may rest upon uncorroborated testimony of an informer. It is appellant's real position, therefore, that the Government, in an attempt to bolster its informer witness, was allowed to introduce inadmissible and prejudicial evidence. With this we are unable to agree. Statements by a conspirator made in the course of and in furtherance of a conspiracy are admissible against all conspirators. Montford v. United States, 5 Cir., 1952, 200 F.2d 759; Schefano v. United States, 5 Cir., 1936, 84 F.2d 513. The statements in dispute made by Lott's cohorts, Reed, Pierce, Miller and Shaw, even though made out of his presence, were in furtherance of the conspiracy and were competent evidence against him. The only question, then, is whether the conversers were properly and adequately identified as co-conspirators so as to make the mon-itored statements admissible. Hopkins saw several of the alleged co-conspirators enter the apartment where the transmitter operated, and he was familiar with most of the voices.[2] Moreover, Hopkins testified that he could identify the voices of the conversers by the fact that they spoke in response to questions put to them wherein their names were mentioned, and by the fact that he could easily recognize Watkins' voice and Watkins, in turn, could identify those persons to whom he spoke. In this manner the voices were identified as belonging to the conspirators whose statements were made in the course of and in furtherance of the alleged conspiracy. Consequently we hold that there was a sufficient connection established and the evidence was properly admissible.

■ The only other error assigned which we think requires discussion is based upon the trial Court's limitation of cross-examination of Watkins on a certain point and its comments upon this line of examination. In its zeal to attack the credibility of the government in-

2. Appellant urges that the testimony of Hopkins should have been rejected *in toto* ("Your honor, we just don't think that he is qualified at all to testify") because, upon cross-examination, Hopkins admitted that he could not positively identify the participants by their voices alone.

"Q. All right now, the only thing you did not recognize if you would hear one of them, one voice come over the radio, could you distinguish that and say who that was by the voice alone? A. Mr. McLean, I could recognize those boys' voices, but I would not be able to swear it was them."

Upon redirect examination he stated that he did have some knowledge of the voices of the various defendants and that he did use that knowlege in connecting them up with the names that were called, so that he was "satisfied in his own mind who was talking." It is clear that he was giving his best recollection, judgment and belief on the subject and that is all that is required.

The admissibility test with respect to this testimony was clearly satisfied. We quote the general rule from 20 Am.Jur. 639, Evidence, Sec. 768: "The law cannot reasonably require of a witness tes-tifying at the trial of an action absolute certainty of observation or statement. * * * A witness who is uncertain as to either observation or recollection of a fact concerning which he is asked to testify may be permitted to give his testimony qualified by a phrase or phrases expressive of something less than a positive degree of assurance. Such qualification affects merely the probative force of the testimony * * *"

Words of similar import were used by the Supreme Court in On Lee v. United States, supra, 343 U.S. at pages 757, 758, 72 S.Ct. at page 973, 96 L.Ed. 1270: "The trend of the law in recent years has been to turn away from rigid rules of incompetence, in favor of admitting testimony and allowing the trier of fact to judge the weight to be given it. * * * Today the tendency is to enlarge the domain of competency, and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. * * *

"We think the administration of justice is better served if stratagems such as we have here are regarded as raising, not questions of law, but issues of credibility."

former, the defense, after first bringing out the fact that Watkins was a convicted narcotics user, sought further to discredit him by attempting to show a possible motive to fabricate. Watkins was questioned on the matter of whether his brother was then in prison on a narcotics charge. When objection was made to this, it was explained that the purpose was to display a possible arrangement whereby Watkins, by helping the Government, might aid his brother. The Court sustained an objection to this line of cross-examination, and in so doing expressed its views that the Government would not be a party to such an arrangement.

It was proper that such far-fetched and speculative testimony be excluded; and the scope of cross-examination is within the sound discretion of the trial Court.[3] And a federal court may express its opinion even with respect to the facts if it is made clear to the jury that they need not be bound by this opinion.[4] Here, the Court stayed within the bounds of sound discretion both in limiting cross-examination, and commenting upon the facts. The jury was carefully, properly and repeatedly told in the Court's charges that they were the sole judges of the facts; and, furthermore, they were told that it was upon them to judge the credibility of witnesses and the weight to be put upon testimony. Moreover, the remarks of the Court were made as one justification for exclusion of the proffered proof and did not relate to the facts upon which the jury was to base its verdict.

The appellant assigns and argues additional points, urging that they constitute reversible error. However, we find no merit in these. They are non-erroneous, harmless [5] or were not properly preserved for review and are not "plain errors or defects affecting substantial rights" so as to be noticeable on appeal under Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. The record reflects that the appellant was given a fair trial, there was evidence upon which the jury could base a guilty verdict and we find no error justifying our setting the verdict aside. The judgment entered thereon is, therefore,

Affirmed.

---

3. Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Weiss v. United States, 5 Cir., 1941, 122 F.2d 675; Community Natural Gas Co. v. Henley, 5 Cir., 1931, 54 F.2d 59.

4. Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Simmons v. United States, 1891, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; Texarkana Bus Co. v. Baker, 5 Cir., 1944, 142 F.2d 491; Pollard v. United States, 5 Cir., 1919, 261 F. 336.

In the Quercia case, supra, the Supreme Court explained the Court's function in this respect: "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law."

5. Rule 52(a) Federal Rules of Criminal Procedure.