Nathaniel **HARRIS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15573.

United States Court of Appeals Eighth Circuit.

Oct. 2, 1957.

Sidney M. Glazer, Berkeley, Mo. (Morris A. Shenker and Bernard J. Mellman, St. Louis, Mo., were with him on the brief), for appellant.

Robert C. Tucker, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., and Robert E. Brauer, Asst. U. S. Atty., St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant Nathaniel Harris was indicted together with Gladys Stamps and Clarence Robinson in two counts for (1) purchasing 224 grains of the narcotic drug heroin other than in or from the original stamped package in violation of Sec. 4704(a), Title 26 United States Code [1] and (2) for receiving and

---

1. Sec. 4704(a) Packages.

"(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

Sec. 7237. Violation of laws relating to narcotic drugs and to marihuana.

"(a) Violation of law relating to opium and coca leaves and marihuana.—Whoever commits an offense or conspires to commit an offense described in part I or part II of subchapter A of chapter 39 for which no specific penalty is otherwise provided, shall be fined not more than $2,000 and imprisoned not less than 2 or more than 5 years."

concealing the heroin knowing that it had been imported contrary to law, in violation of Sec. 174, Title 21 U.S.C.A.[2]

The evidence on the jury trial tended to show that two St. Louis policemen, Nathaniel Robinson Jr. and Robert Foxworth, on duty as beat policemen at about two o'clock of the morning of February 8, 1956, went to the intersection of Page Boulevard and Taylor Avenue in St. Louis where they had a meeting with someone to get information, then went to a certain four room apartment house at 4567 McMillan. They approached the house through the alley towards a lighted room on the ground floor. The house had two windows facing south. Officer Robinson stood on a can and looked into the room through a gap an inch and a half wide between the shade and the sill of one of the windows. Foxworth stood on a grating and looked into the room through a similar view space in the other window. Officer Foxworth saw appellant Harris in the room, was close enough to him to reach him, and was positive of his identification. According to Foxworth, Harris was looking at something he was holding in his left hand and over which he made a motion with his right hand. Officer Robinson did not see Harris but he saw defendant Gladys Stamps in the room standing alongside Robinson, who was seated next to a bed on which there was some powder piled on a mirror. Robinson had his hand in the white powder on the bed. After short observation through the windows the officers entered the room together, but the inmates became aware of their approach and got out of the windows and ran away before the entry of the officers, leaving behind the powder on the mirror, some filled capsules, a box of empty capsules, some eye droppers with needles attached and a flour sifter. There were also capsules in a coat in the room. It was shown that the powder on the mirror was 42 grains of heroin and that there were 169 capsules filled with heroin. The heroin and paraphernalia were identified and put in evidence before the jury.

Bernard A. Theisen Jr., a narcotic agent employed in the St. Louis office, testified for the govenment that he had talked to the defendants Robinson and Stamps in the jail about two months after the occurrence at 4567 McMillan and each of them told him that the three defendants had been in the room (as claimed by the government) and that the heroin belonged to appellant Harris.

The defendant Robinson did not take the stand, but on the trial Harris and Stamps testified that Harris was not present in the room at 4567 McMillan on the night of the raid. Stamps testified that the third person in the room at the time in question was one Gola Mason. Gola Mason was called as a witness and corroborated Stamps' testimony. He swore positively that he was present, saw the powder and paraphernalia and that Harris was not there. He said he ran away with the others on the approach of the officers.

Grace Draper, a witness for Harris, testified that on the night in question she had just returned to her home at 1259 Aubert street from the hospital where she had had a baby. Harris was the father of her baby and had not seen it. He came to her house between 11:00 and 11:30 on that night and left early in the morning at about six o'clock. She said that Gola Mason, who was a cousin

---

2. Section 174 provides in part: "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be fined not more than $2,000 and imprisoned not less than two or more than five years. For a second offense, the offender shall be fined not more than $2,000 and imprisoned not less than five or more than ten years. For a third or subsequent offense, the offender shall be fined not more than $2,000 and imprisoned not less than ten or more than twenty years."

of Harris, also came to the house and made statements in her hearing indicating that he had been at the scene of the police raid. All of the defendants were convicted on both counts and Harris was sentenced to an aggregate term of 10 years imprisonment and a fine of one dollar.

Harris appeals and contends for reversal:

(1) that the evidence was insufficient to support the verdict; (2) that hearsay evidence which was very prejudicial to him was erroneously received; (3) that the court erred in instructing the jury and (4) that the court erred in imposing cumulative sentences against him.

■ 1. Examination of the evidence convinces that there was competent and material evidence that Harris was present with the other defendants in the room at 4567 McMillan where unstamped heroin was being handled, that Harris was "shown to have had possession of it," and to be a "person in whose possession it was found" within the meaning of the sections of the statute on which the indictment was rested. It is fairly inferable from the picture presented by the evidence and the jury could well have concluded that defendants, gathered in the room about their pile of heroin with the filled and unfilled capsules and paraphernalia for filling capsules and taking heroin, were engaged, as the government claimed, "in what is called in the vernacular of the business, 'capping up' heroin." The jury was not obliged to credit the evidence offered by Harris to establish an alibi.

■ 2. Appellant contends the court erred in permitting the government witness Theisen to testify to hearsay statements made to him by the codefendants Gladys Stamps and Clarence Robinson. Theisen's testimony was that both Gladys Stamps and Clarence Robinson told him at the jail, nearly two months after the occurrence in question, that Harris was the owner of the heroin that was seized and was present in the room when and where the defendants had it.

It is not seriously disputed that viewed from certain angles that testimony was hearsay. As to defendants Gladys Stamps and Clarence Robinson it was not hearsay but constituted a confession of guilt on their part and a description of their crime that was plainly admissible against each of them. The position of Gladys Stamps was different from that of Robinson because Gladys Stamps became a witness for Harris on the trial and gave testimony in support of his alibi. She swore that Harris was not in the room with her and Robinson or in possession of the heroin. Her contradictory statements to Theisen that Harris was in the room with her and Robinson, that the heroin belonged to Harris, and that he was the person from whom she (a confirmed narcotic addict) "copped" were also plainly admissible against her. Robinson did not take the witness stand.

Appellant Harris did not raise the objection on the trial that the statements Gladys Stamps and Robinson had made to Theisen were hearsay against Harris. But he was represented by counsel of his choosing, whose competency is not questioned, and may well have purposely determined to waive hearsay objection and let the statements be received in order to get the benefit of Stamps' testimony supporting his claimed alibi. In view of the apparent waiver of the hearsay objection it must be held that the court did not commit reversible error in receiving the testimony of Theisen in evidence or in not giving to the jury an explanation that was not requested, of the legalistic aspects in which the testimony should be disregarded as hearsay.

Discussion of such rulings or instructions for one in a position like that in which Harris stood on the trial of this case is found in the dissenting opinion of four members of the Supreme Court in Delli Paoli v. United States, 352 U.S. 232, 246, 77 S.Ct. 294, 1 L.Ed.2d 278. Citing Nash v. United States, 2 Cir., 54 F.2d 1006, 1007.

■ 3. The instructions given by the court are attacked here on the ground

that they permitted the jury to convict Harris if they found that he had the described heroin in his possession without requiring them to find as a fact as to the first count that he purchased the heroin and as to the second count that he did receive and conceal it knowing that it had been imported into the United States contrary to law. But the court read to the jury the provisions of Title 26 United States Code § 4704(a), Title 21 U.S.C.A. § 174, and the indictment charging defendants with violation thereof and the provisions by which possession of unstamped narcotic drugs is made prima facie evidence of a violation (26 United States Code § 4704(a)) and by which such possession "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C.A. § 174. The jury was sufficiently and correctly instructed of what it was necessary for them to find from the evidence in respect to each of the individual defendants beyond a reasonable doubt in order to convict on each count of the indictment.

■ 4. Under his fourth point the appellant contends that the court erred in imposing cumulative sentences in respect to the two counts.

The record shows that on the return of the verdict in this case finding the defendant guilty on each of the two counts of the indictment, the court prescribed imprisonment for a period of five years as to and under the charge contained in count one and for a period of five years as to and under the charge contained in count two, the second term to run consecutively with the term imposed under count one. The court also declared concerning the two prescribed periods of imprisonment that they made "an aggregate term of imprisonment imposed herein upon defendant Harris of ten years."

This appeal was submitted at the May term in this year and on that submission a mistake was made as to the maximum penalty prescribed for the offense alleged in the second count and denounced in Title 21 U.S.C.A. § 174. Title 21 U.S.

C.A. § 174 shows the maximum imprisonment for violation of that section to be ten years but the offense was committed as stated on February 8, 1956, and by amendment the maximum period of imprisonment made applicable for first offense under the section committed at that time is five years.

Accordingly on the submission of the case at the May term, the court did not find it necessary to pass upon appellant's contention that the trial court erred in imposing cumulative sentences of five years upon each of the two counts in the indictment to run consecutively. The sentence to ten years imprisonment was considered as an aggregate sentence as declared by the trial court and as such was within the statutory maximum. When the amendment of the statute was called to our attention a rehearing was had and the question as to the periods of imprisonment imposed upon appellant was again presented and has been reconsidered.

The argument for appellant is in substance that the evidence showed only the single fact against him, that he had possession of the heroin, and nothing more and even if that fact was "prima facie evidence of a violation" and "authorized conviction * * * unless" [explained] the single fact could not justify two cumulative sentences.

If the question thus presented was of first impression it might be conceded that more than one answer would be possible, but the same question has often been considered by the federal courts and it is settled by unanimous and uniform decisions that separate and consecutive sentences for violation of the statutes here involved or their predecessors may be imposed, notwithstanding each offense arose from one common transaction. The latest case is Gore v. United States, 244 F.2d 763 which was decided by the court of appeals of the District of Columbia April 25, 1957, after the judgment herein was rendered on April 27, 1956.

In that case the defendant had been indicted in six counts respecting two sales of narcotics in violation of Title 21

U.S.C.A. § 174 and Title 26 United States Code § 4704(a) and § 4705(a) and after trial and conviction he had been sentenced to fine and imprisonment for from one to five years on each of the first three counts, the sentences to run consecutively. Similar sentences were imposed upon the last three counts to run concurrently with the first. Defendant subsequently moved for vacation or modification of the sentences under Title 28 United States Code § 2255 and his motion was denied. On the appeal taken from the denial the court of appeals of the District of Columbia reviewed the decisions on the question of cumulative sentences under the narcotic acts in its own and other circuits. It quoted from Kendrick v. United States, 1956, 99 U.S.App.D.C. 173, 238 F.2d 34 as follows:

> " 'A single act which violates two statutes is punishable under both, unless the offenses defined therein are identical. The test of identity is whether the same evidence will sustain both charges. If one of the offenses requires an element of proof which the other does not, a conviction of one does not bar prosecution for the other.' " Id., 238 F.2d at page 36.

and declared:

> "When Congress enacted 26 U.S. C. §§ 4704(a) and 4705(a), and 21 U.S.C.A. § 174, it created three separate offenses. Each involves a different facet of the narcotics trade and each has different evidentiary requirements. This court and courts of a number of the other circuits, including the First, Fifth, Sixth, Seventh, Eighth and Ninth, have approved convictions and separate and consecutive sentences for violation of the same statutes involved here, or their predecessors, where each offense arose from one common transaction. And, as recently as January 2, 1956, the Third Circuit, in a well reasoned opinion by Judge Maris in United States v. Brisbane, 3 Cir., 239 F.2d 859, a case identical

to the present one, reached the same conclusion." 244 F.2d 763, 765.

The decision in the Gore case is in accord with the decision of this court in McIntosh v. White, 1927, 21 F.2d 934 and we are in accord with the Gore decision as presenting the law applicable to the question here involved brought up to the present. The imposition of separate and cumulative sentences herein of five years under each of the two counts of the indictment was not erroneous.

Appellant has also argued that the instructions to the jury were erroneous in that the court did not require the jury to find specifically that defendant had done the acts charged in the two counts of the indictment in order to convict, but the instructions fully and accurately covered the applicable provisions of the sections of the statutes and clearly defined the conditions for conviction. They were not excepted to and were without error.

Affirmed.