Charles Edwin ORSER, Appellant,

v.

UNITED STATES of America,
Appellee.

Johnny Lee PARKER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 22919, 22900.

United States Court of Appeals
Fifth Circuit.

May 6, 1966.

Rehearing Denied in No. 22900.
June 23, 1966.

No. 22919:

Donald G. Nichols, Jacksonville, Fla., for Orser.

William J. Hamilton, Jr., Asst. U. S. Atty., Jacksonville, Fla., Edward F. Boardman, U. S. Atty., Middle District of Florida, for appellee.

No. 22900:

Adam G. Adams, II, Jacksonville, Fla., for Parker.

Thomas M. Baumer, Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before PHILLIPS,* RIVES, and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge:

Orser and Parker were charged in the same indictment, composed of two counts. A severance was granted Parker. They were each convicted after separate jury trials and their appeals were heard together at the recent session of this Court in Jacksonville. We therefore decide both cases in one opinion.

As to Orser, the government, being required to elect between the two counts, chose to stand on count 1, charging transportation of a stolen Cadillac automobile in interstate commerce from Jekyll Island, Georgia, to Jacksonville, Florida, in violation of Title 18, United States Code, Section 2312.

As to Parker, the trial court granted a directed verdict of not guilty as to count 1. The jury found him guilty on count 2, which charged receiving and concealing the same motor vehicle in violation of Title 18, Section 2312, United States Code.

I

ORSER'S APPEAL

Orser was tried first. The prosecution presented strong evidence of guilt. The defendant, represented by counsel, offered no evidence in his own behalf, and the record shows that the jury returned its verdict after deliberating for fifteen minutes. Upon careful consideration we can see no justification

* Of the Tenth Circuit, sitting by designation.

for a reversal of this conviction. Accordingly, it must be affirmed.

Orser attacks the Judge's charge to the jury that his unexplained possession of a recently stolen automobile was a circumstance from which the jury could infer his guilt. In support of his position, he cites Bollenbach v. United States, (1946), 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350.

For future reference, the carefully drawn charge, which we hereby approve, will be set forth in the margin.[1]

In *Bollenbach* the Supreme Court held that it was reversible error to charge the jury that they should *presume* guilt under the federal statute from possession of recently stolen securities. After being out for seven hours, the jury reported that it was "hopelessly deadlocked" as to the defendant's responsibility for the interstate transportation of the securities. One of the jurors asked, "Can any act of conspiracy be performed after the crime is committed?" Without answering this question, the trial judge for the first time charged the jury that unexplained possession "raises a presumption that the possessor was the thief." Since the jury returned a guilty verdict within five minutes it was clear that they took this charge on *presumption* as an answer to their question.

The error attacked in *Bollenbach* is a charge that leaves the jury with the idea that they *must* assume guilt unless the defendant proves to the contrary. *Bollenbach,* therefore, dealt with the layman's understanding of the term "presumption" under the circumstances of that case.

■ It is clear that in the case at bar Judge Allgood's charge told the jury that they must decide as the triers of fact whether an inference of guilt should be drawn from Orser's unexplained possession. Moreover, at all points his charge was couched in terms of "inference" and not "presumption". Although laymen, as well as judges, may be confused

**1.** "Possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the jury may reasonably draw the inference and find that the person in possession knew the property had been stolen.

"Possession in one state of property recently stolen in another state, if not satisfactorily explained, is a circumstance from which the jury might reasonably infer and find in the light of surrounding circumstances that the person in possession not only knew it to be stolen property, but also transported or caused it to be transported in Interstate Commerce.

"The term, 'recently' is a relative term which has no fixed meaning. Whether property may be considered as recently stolen, depends upon the nature of the property and all the facts and circumstances shown by the evidence. The longer the period of time since the theft, the weaker the inference which may be drawn from unexplained possession.

"If you find from the evidence beyond a reasonable doubt that the motor vehicle described in the indictment was stolen, and was transported in Interstate Commerce as charged, and that, while recently stolen, the property was in the possession of the accused in another State than that in which it was stolen, the jury would be justified in drawing from those facts the inference that the motor vehicle was transported or caused to be transported in Interstate Commerce by the accused with knowledge that it was stolen, unless possession of the recently stolen property by the accused in such other state is explained to the satisfaction of the jury by other facts and circumstances in the case.

"In considering whether possession of recently stolen property has been satisfactorily explained, you will bear in mind that in the exercise of constitutional rights, the accused need not take the witness stand and testify, and you may draw no inference of guilt or innocence from the failure of the accused to take the stand and testify, he has an absolute right not to do so.

"Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.

"It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence warrant any inference which the law permits the jury to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence, then the jury should acquit the accused." (R. pp. 88–91.)

when asked to distinguish inferences from presumptions, Judge Allgood's charge, taken in context, makes clear that the jury need only consider this as circumstantial evidence for whatever value it may have.

In Barfield v. United States, 229 F.2d 936 at 939 (5 Cir. 1956), this Court said:

"This brings us then to the issue of Appellant's knowledge that such transportation was of a stolen vehicle. Possession itself, under proper circumstances, may be sufficient for the jury to draw the inference of guilty knowledge. Considering that it was for the jury to accept or reject his explanation the main theme of which was that he was a hitchhiker only, we hold that there was a basis for the inference here."

In that case the trial judge had charged in terms of presumption. We said (229 F.2d at 940):

"We think too, that the use of the words 'presumption' and 'presume' in the instruction was misleading. What the court was dealing with was an inference rather than a presumption. * * *

"* * * The use of the word 'inference' has had the approval of this court in cases where like questions were presented as the one which is now before us.[7]

"7. Levi v. United States, 5 Cir., 1934, 71 F.2d 353; Janow v. United States, 5 Cir., 1944, 141 F.2d 1017; Yielding v. United States, 5 Cir., 1949, 173 F.2d 46."

See also Herman v. United States, 289 F.2d 362 (5 Cir., 1961).

Thus, this Circuit has consistently approved charges in terms of "inference" while disapproving charges in terms of presumption. We think Judge Allgood's charge was a model charge. Similar charges have been consistently upheld as proper. United States v. Tremont, 351 F.2d 144, at 147 (6 Cir., 1965); McIntosh v. United States, 341 F.2d 448, at 456, (8 Cir., 1965); cert. den., 381 U.S. 947, 85 S.Ct. 1778, 14 L.Ed.2d 711; Harding v. United States, 337 F.2d 254, at 257 (8

Cir., 1964); Travers v. United States, 118 U.S.App.D.C. 276, 335 F.2d 698 at 700–702 (1964). See also Manual on Jury Instructions—Criminal, 36 F.R.D. 457, at 633–664 (1963).

The Court expresses its appreciation to Donald G. Nichols, Esq., of the Jacksonville Bar, court appointed counsel, for his professional efforts in behalf of Orser.

## II

### PARKER'S APPEAL

As to Parker, the jury verdict indicates the following facts for which there is support in the evidence:

On the morning of April 30, 1965, the Cadillac automobile of Mr. Obie T. Brewer was missing from the motel parking lot at Jekyll Island, Georgia, where he had left it the previous evening at about 11:30 o'clock. Mr. Brewer was the only person having a set of keys to the car and he had given no one permission to move it. The state highway patrol was notified. The next day he was advised of the recovery of his automobile and went to Jacksonville, Florida, where it was delivered to him at the police parking lot. The car was undamaged, and Mr. Brewer did not know how far it had been driven since its disappearance.

In Jacksonville, on April 30, Charles Webber, government informer and witness, received a telephone call from Charles Edwin Orser. Webber went to Orser's house. When he got there Orser came out and they talked. Orser then went back in the house. Webber saw Orser talking to two men in the house. A few minutes later Orser, the appellant, and an unidentified man came out.

Orser went over to his truck and removed a ring of keys and handed them to Parker. Parker removed one key and returned the others to Orser. Orser and Webber then departed in Webber's car. Appellant and the other man "were to follow" to a bowling alley in Orser's truck. When they got there Webber and Orser drove off "to make a phone call". Parker and the other man remained in the truck at the bowling alley. Webber

telephoned Zigrossi "for him to meet us * * * to pick up the car and make an arrest". Zigrossi was an undercover agent of the F.B.I., using the alias "Bud Dixon".

After telephoning Zigrossi, Orser and Webber returned to the bowling alley. Parker then got into Webber's car with Webber and Orser. Webber drove them to the parking lot of the Thunderbird Restaurant, where Parker got out of Webber's car, walked over to a "gray Cadillac", got in and cranked it up. Parker then drove the Cadillac behind Webber and Orser to another parking lot. When they got there, Webber parked his car up against the building and appellant parked the Cadillac next to the street which was well lighted. Parker then, pursuant to Webber's instructions, got out of the Cadillac and got in Webber's car.

A few minutes later, Zigrossi came around the corner of the building and Webber and Orser got out of the car to talk with Zigrossi. Webber testified that he introduced Zigrossi to Orser as "Bud Dixon". Webber and Zigrossi both testified to conversations between Zigrossi and Orser to the effect that Orser had gotten the Cadillac in Georgia, that he could get all the clean "Cads" and Thunderbirds Zigrossi could use, and other incriminating remarks. During the course of these conversations Parker was sitting in Webber's car about nine feet away and did not say anything. His name was not mentioned. Parker made no comment on anything that was said, but merely sat in the car. Neither Webber nor Zigrossi were able to say whether Parker was able to hear and/or understand anything that was being said.

It was during the course of these conversations that, in the words of Webber, "two cars come up there pretty fast and a bunch of men got out with guns and arrested us". Zigrossi and Webber were taken to the Police Department with Orser and Parker. Of course, neither was placed in jail and no charges were preferred against them.

The record reveals that court appointed counsel, Adam G. Adams II, Esq., of the Jacksonville Bar, has represented Parker, in the court below and here, as ably and vigorously as if he had been rewarded with an unusually lucrative fee. This is in the best traditions of the American Bar, for which we tender counsel the compliments of the Court. He has raised every possible point in his client's behalf. He has cited no less than forty-one statutes, cases, and commentaries in support of his position. We feel, however, that five of the six points on appeal have been well settled against appellant by prior precedent.

The other point, however, is of sufficient concern to require further treatment. Appellant states his point this way:

The District Court erred in permitting the witnesses Webber and Zigrossi to testify to conversation between Zigrossi and Orser without proper showing that said conversation took place in the presence of defendant or that defendant heard, understood or otherwise appreciated what was being said and

(2)

without proper showing that said conversation concerned defendant or was of such a nature as to reasonably require defendant to "react" under the circumstances. [numerical division ours].

■■ We deal first with appellant's point 1. The trial court was correct in holding that the conversation, if it took place, was in the presence of the defendant, George v. United States, 1942, 75 U.S.App.D.C. 197, 125 F.2d 559. Assuming that the jury believed the conversation occurred as described, it was also for the jury to decide whether the defendant heard and understood it, Thurmond v. State, 212 Miss. 36, 53 So.2d 44 (1951) and authorities there cited. In a criminal prosecution, all facts, including those not disputed, are to be determined by the jury. Roe v. United States, 5 Cir., 1961, 287 F.2d 435, cert. den. 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29.

■ Defendant objected to the admission of the conversation solely on the

ground that it was hearsay. He offered no proof from any source to cast doubt upon the ability of appellant to hear or understand the conversation from a distance of nine feet. It was not shown that he had any impairment of hearing or that there were any loud or competing noises or other conversations in the area. The defendant requested no instruction expressly submitting this issue to the jury, nor did the court give one *sua sponte*. It is obvious, therefore, that the defendant conceded this point, Carpenter v. United States, 8 Cir., 1940, 113 F.2d 692; Harris v. United States, 8 Cir., 1957, 248 F.2d 196; affirmed 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597; rehearing denied 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843; Smith v. United States, 5 Cir., 1965, 343 F.2d 539; Richards v. United States, 5 Cir., 1964, 329 F.2d 188, cert. denied 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57; Garcia v. United States, 5 Cir., 1963, 315 F.2d 133, cert. denied, 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed.2d 82.

■ With reference to part 2 of appellant's contention, we agree that the conversation between Webber and Zigrossi was not competent against Parker as an admission by silence. To have made it competent, there must have been an accusation against the defendant personally and such as would naturally have brought forth a contradiction if he did not assent to its truth, 31A C.J.S. Evidence § 294; 80 A.L.R. 1272. The conversation made no accusation against Parker and the implied admissions rule did not come into play.

■ We hold, however, that Orser's conversation in Parker's presence was nevertheless admissible because the acts and declarations of each of the members of a co-partnership in crime during the continuation of the partnership and in furtherance of their common enterprise in crime is admissible against all of them. Downing v. United States, 348 F.2d 594 at 600 (5 Cir., 1965); Panci v. United States, 256 F.2d 308 at 311 (5 Cir., 1958); Scarborough v. United States, 232 F.2d 412 at 415 (5 Cir, 1956); Lott v. United States, 230 F.2d 915 at 916–917 (5 Cir., 1956), cert. den., 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477, rehearing den., 352 U.S. 860, 77 S.Ct. 25, 1 L.Ed.2d 70; Pereira v. United States, 202 F.2d 830 at 835 (5 Cir., 1953), aff'd. 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; Montford v. United States, 200 F.2d 759 at 760 (5 Cir., 1952). See also United States v. Copeland, 295 F.2d 635 at 637 (4 Cir., 1962), cert. den. 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388; United States v. Dennis, 183 F.2d 201 at 230–231 (2 Cir., 1950) (per L. Hand). Cf. Wiborg v. United States, 163 U.S. 632 at 657–658, 16 S.Ct. 1127, 41 L.Ed. 289 (1896).

As the Supreme Court said in Fiswick v. United States, 329 U.S. 211 at 217, 67 S.Ct. 224, at page 227, 91 L.Ed. 196, (1946) the "act of one partner in crime is admissible against the others where it is in furtherance of the criminal undertaking". The real rationale of this rule is that the evidence is not hearsay at all. It is evidence of a verbal act by one of the partners in crime in furtherance of that crime. The evidence stands on the same footing as eyewitness testimony that A, B and C stood in a bank with drawn guns during the course of a robbery. A could not be allowed to complain that the testimony as to B and C was hearsay! Likewise, if all A and B did was stand with drawn guns while C said, "This is a stick-up," A could not complain that C's words were hearsay. They are *acts* by a co-partner and evidence of those acts. Here, the testimony was competent to show that Parker's co-partner, Orser, tried to sell the Cadillac and that their enterprise contemplated further thefts.

■ Before such testimony was admissible, however, it was necessary for the presiding judge to find that there was ample evidence, absent the statements of Orser, to show that a co-partnership in crime existed. Panci v. United States, 256 F.2d 308 at 311 (5 Cir., 1958); Montford v. United States, 200 F.2d 759 at 760 (5 Cir., 1952). In *Montford,* this Court said (200 F.2d at 760):

"But a defendant's connection with a conspiracy can not be established by

the extra-judicial declaration of a co-conspirator, made out of the presence of the defendant. There must be proof *aliunde* of the existence of the conspiracy, and of the defendant's connection with it, before such statements become admissible as against a defendant not present when they were made."

It is for the trial judge in the first instance, and not the jury, to decide whether there was ample proof of the co-partnership to make Orser's statements admissible. The Judge is always to decide any issue of fact on which the competency of evidence depends. See United States v. Dennis, 183 F.2d 201 (2 Cir., 1950) (per L. Hand). In the instant case, Police Captain Starrett had testified that he had taken the key to the Cadillac out of Parker's pocket after Parker's arrest. This was sufficient predicate on which Judge McRae could have satisfied himself that Parker was part of the partnership in crime. Witnesses subsequent to the undercover agent also clearly established the link.

Had the defendant requested it or had Judge McRae so desired, this testimony could have been placed before him out of the presence of the jury in order to lay the foundation for the undercover agent's testimony without altering the order of presenting the government's case to the jury. Since the question of fact involved in admissibility is one for the Judge, we hold that on this record no error was made. Downing v. United States, 348 F.2d 594 at 600 (5 Cir., 1965).

The judgments in both cases are affirmed.

RIVES, Circuit Judge (specially concurring):

I concur in the affirmance of both judgments of conviction and concur heartily in the opinion as to both cases, except that part relating to whether the conversation between Webber and Zigrossi occurred within the hearing of Parker. As to that part, I refrain from expressing any view, because whether Parker heard or did not hear that conversation seems to me to be immaterial.

ON PETITION FOR REHEARING IN NO. 22900

PER CURIAM:

On petition for rehearing Parker contends that the district court could not have properly ruled on his motion to exclude Zigrossi's testimony since at the time of his motion insufficient foundation had been laid to finding a "copartnership in crime." This contention must be overruled for two reasons.

First, we held in our initial opinion that the testimony of Police Captain Starrett was sufficient predicate by itself on which Judge McRae could have found a copartnership in crime. We reaffirm that holding.

Second, we held that taking the entire record there was a clear showing of the copartnership in crime. Parker appears to misconceive the reviewing function, and argues that we may only look at the record made prior to Zigrossi's testimony. Our function on appeal is to determine whether the testimony was erroneously admitted, and, if so, whether the error was prejudicial.

In the instant case the district judge admitted the testimony for the wrong reason. But this did not prejudice Parker, because the testimony was clearly admissible for a different reason, which we explained in our first opinion. As an appellate court it is our duty to look at the entire record to see whether the trial court at the conclusion of the evidence should have instructed the jury to disregard Zigrossi's testimony. Clearly, by the end of the trial the copartnership in crime had been established and the jury in reaching its verdict could properly consider all of Zigrossi's testimony. Therefore, even if the initial admission of the evidence was error, it could not have been prejudicial error.

Rehearing is

Denied.