## FEIGENBUTZ et al. v. UNITED STATES.
### No. 9560.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1933.

Rehearing Denied June 12, 1933.

123

Verne Lacy and John Neu, Jr., both of St. Louis, Mo., for appellants.

Louis H. Breuer, U. S. Atty., of Rolla, Mo., and Arthur A. Hapke and Bryan Purteet, Assts. U. S. Attys., both of St. Louis, Mo., for the United States.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The four above-named appellants, together with four other defendants, were indicted in the District Court for the Eastern District of Missouri, charged with conspiring with each other, with twenty other named persons, and with divers other persons whose names were to the grand jurors unknown, to commit offenses against the National Prohibition Act (27 USCA § 1 et seq.), to wit, to manufacture and possess intoxicating liquor for beverage purposes, to possess property designed and intended for use in the unlawful manufacture of intoxicating liquor for beverage purposes, and to maintain nuisances by establishing and maintaining places where such intoxicating liquor was manufactured and kept. This conspiracy was alleged to be in effect from about April 1, 1931, to February 17, 1932. The places at which the liquor in question was manufactured and kept were the Boliancz farm in St. Louis county, the Pfeil farm in Jefferson county, the Falzone farm in St. Louis county, the Helling farm in Franklin county, and the Schaper farm in St. Louis county, all in the vicinity of St. Louis, Mo., and within the eastern judicial district of Missouri. Also a building at 2315 South Broadway in St. Louis. At all these places stills, similar in construction and generally of large capacity, were operated between April 1, and November 19, 1931; and connected with them, variously were found large quantities of mash in vats and of distilled liquor. The still at 2315 South Broadway was located in a house with a garage in the rear. It was not far distant from the premises at 2205 South Broadway, where appellant Joseph Feigenbutz conducted a cleaning and dyeing business, and where, during the conspiracy period, the persons named as conspirators and coconspirators held frequent meetings. Here a number of the cars and trucks, alleged to have been used in connection with the business of the conspiracy, were frequently seen to be parked, as also at the garage at 2315 South Broadway. The case is made by the introduction and piecing together of almost innumerable details of circumstantial evidence. Many of the circumstances, as the trial court says, were proved by direct evidence. But two of the appellants, Joseph Feigenbutz and Addis McCarthy, testified in defense, their testimony consisting merely of a denial of their connection with the conspiracy, and of the evidence of the government tending to connect them with it. It is sufficient to say in this regard that the entire evidence, too extended to incorporate by analysis in this opinion, was abundantly sufficient to support the verdict and judgment, nor was its sufficiency challenged by appropriate motion at the close of the testimony. We are confined, therefore, to the specifications of error, alleged to have occurred in the course of the trial, and alone relied upon for reversal.

Specification No. 2 assigns error for the refusal of the following requested instruction: "The court instructs the jury that participation in an offense which is charged as the object of the conspiracy does not necessarily prove the defendant guilty of conspiracy. The evidence must convince the jury that the defendant or defendants did something other than participate in the offense which is the object of the conspiracy charge. There must, in addition thereto, be proof of the unlawful agreement and participation therein, with knowledge of the agreement."

Of course, it is well known that the court is not compelled to charge the jury in the language of a requested instruction. It is enough if, in the charge as a whole, the subject-matter is sufficiently covered and made clear to the understanding. Frisina v. United States (C. C. A. 8) 49 F.(2d) 733, 737. The court charged that the jury must find that a conspiracy existed, and that no person could be bound by the words or acts of himself or others unless he was engaged in the conspiracy and a party to it. We think the

language of the charge sufficiently covered the subject-matter of this request.

■ Specification No. 3 is addressed to the refusal of the court to give the following requested instruction: "The court instructs the jury that proof of the overt acts alone would not warrant the jury in convicting the defendants for conspiracy."

We think no substantial error can be predicated upon the refusal of this request in the absolute form in which it is worded.

In Dahly v. United States, 50 F.(2d) 37, 42, this court, speaking through Judge Booth, said: "Proof of the overt acts may or may not be sufficient to prove the conspiracy. This will depend upon the character of the overt acts; not whether they are criminal per se or not, but whether they are of such character separately or collectively that they are clearly referable to a preagreement or conspiracy of the actors. If the jury is satisfied, beyond a reasonable doubt, from the evidence that such is the character of the overt acts proven, the jury may find the pre-existence of the conspiracy. Otherwise, evidence independent of the overt acts is necessary to prove the conspiracy."

■ Specification No. 4 charges error in permitting R. H. Gaston, special agent of the bureau of prohibition, to identify the defendants as persons appearing in moving pictures exhibited to the jury, showing persons and automobiles congregated at No. 2205 South Broadway, alleged to be a rendezvous of the conspirators in St. Louis. It would be sufficient to point out that this alleged error is preserved by no assignment. However, the picture itself is not challenged, only the identification of the persons appearing therein. But counsel for appellants, in making his objection, conceded that a previous witness had "already testified as to who was there." It would seem, therefore, that no substantial prejudice could have resulted even if the objection of counsel were well taken. Furthermore, Gaston was the photographer by whom the picture was taken. He knew the persons appearing, and was a competent witness to identify them. The jury, as the court said, did not know these persons, so far as appears from the record. Without such identification the pictures shown could have little probative value.

■ Specifications of error Nos. 5, 6, and 7 have to do with evidence introduced as to the purchase of and payment for certain motor trucks in 1929 and 1930, prior to the 1st day of April, 1931, the date when the conspiracy is alleged to have been entered upon. For this reason, it is insisted that this evidence is incompetent. Counsel for appellants seem either to misconceive or to ignore the probative value of this evidence. It appears in the testimony of the government witness Dillon that in August, 1931, on the Boliancz farm, a Chevrolet truck, with the motor number 2,-065,628, drove up with 4,700 pounds of Anheuser-Busch corn sugar to serve the still in operation on that farm. It became important to ascertain the ownership of the truck as bearing upon, and tending to prove, the identity of a party to the conspiracy. Accordingly it was developed that, on or about December 3, 1929, a Chevrolet truck, motor number 1,357,525 was sold by the Dexter Motor Company to one H. Summers, and that soon thereafter appellant Addis McCarthy paid a sum of money in cash to the Dexter Company to cover all or part of the purchase price of this truck. September 9, 1930, the Dexter Chevrolet Company sold a Chevrolet truck, motor number 2,065,628, receiving as part payment the Chevrolet truck, motor number 1,357,525. The balance of the purchase price was to be made in monthly payments of $28.-25 each. Payments aggregating $282.50 were made under this arrangement and Addis McCarthy's bank account shows monthly disbursements in the same amount and upon approximately the same dates. This testimony was admissible as tending to prove the ownership of truck, motor number 2,065,628, which, in August, 1931, was engaged in furthering the unlawful conspiracy and was not objectionable upon the grounds urged by appellants.

■ In specification 8 it is contended that the court erred in permitting the introduction in evidence of testimony concerning the commission of the alleged overt acts without first requiring proof to be made of the existence of the alleged conspiracy. Conspiracy is an offense which can ordinarily be established only by a great number of apparently disconnected circumstances. Necessarily the existence of the conspiracy in most cases can be made to appear only inferentially from the acts of the parties committed in furtherance thereof. As said by this court in Goode v. United States, 58 F.(2d) 105, 107: "A conspiracy is rarely susceptible of proof by direct evidence, but must be proved by circumstantial evidence. It may be deduced from the conduct of the parties and the attending circumstances."

■ For this reason much latitude is allowed to the discretion of the trial court in

determining the order in which testimony having the ultimate tendency to prove the conspiracy may be introduced, the crucial requirement being that the existence of a conspiracy, as laid, must be satisfactorily established before the overt acts alleged may be permitted to play their jurisdictional part in the consummation of the offense charged. We do not think the sound discretion of the trial court was abused in the instant case.

We have reserved to the last specification No. 1, because this has seemed to us to present the only error relied upon worthy of serious consideration. It appears that December 4, 1931, a St. Louis police officer discovered a still and a large quantity of mash at 5109 Daggett avenue in the city of St. Louis. The premises belonged to one Lena Minnella, named in the indictment as a coconspirator. A man named Ellis was at the time stirring the mash in the vats. Officer Busch, a government witness, testified that on that date Lena Minnella told him that the still belonged to Joseph Feigenbutz; that she had rented the premises to him for the purpose of manufacturing liquor; and that he had placed the still there. Agent Olmstead corroborated Busch, adding her statement that she had seen appellant Henry Feigenbutz there on one or two occasions. Lena Minnella was not produced as a witness at the trial. Officer Busch testified that he had tried to find her, but that she had been "gone for the past three days." Counsel for the defense objected to this testimony as follows: "Mr. Lacy: I object to this line of testimony, because it doesn't in any way connect the defendants here on trial with the responsibility for that still, or that there was any conspiracy to establish that still."

The government advised the court that Lena Minnella was a coconspirator and that this would be shown later. On this promise the court overruled the objection stating that, if the connection was not made, the testimony could be stricken.

"Mr. Lacy: All right Your Honor. Note an exception."

The connection of the Minnella woman as a conspirator was not shown, and counsel for defendants did not move to strike out that testimony. But for this failure on the part of the defense, the admission of this testimony, clearly incompetent in the absence of proof that the woman was a coconspirator, would be reversible error. As the matter stands, we are led to a consideration of other circumstances developed at the trial. Both

Joseph and Henry Feigenbutz were shown in the testimony to have been especially active participants in the business of the conspiracy. On one occasion, at the Helling farm, Joseph Feigenbutz, in company with appellant McCarthy, fired at officers attempting to arrest him. In making his escape he lost his straw hat, which was recovered by the officers, identified, and introduced in evidence at the trial. These two defendants were the only ones affected by the Minnella statement. Henry Feigenbutz did not testify. The evidence, apart from this statement, establishing the conspiracy and connecting these appellants with it is so overwhelming and convincing that we feel a reversal upon this ground, involving, as it does, failure on the part of counsel to avail themselves of the court's invitation and permission to strike the objectionable testimony, if not rendered competent, would result in a palpable failure of justice. It is our conclusion that the judgment should be affirmed. It is so ordered.