Ralph **ALEXANDER**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Ray Field **JACKSON**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Nos. 15588, 15589.

United States Court of Appeals Eighth Circuit.

Feb. 14, 1957.

Rehearing Denied March 9, 1957.

R. Eugene Pincham, Chicago, Ill. (Charles B. Evins, Chicago, Ill., on the brief), for appellants.

Robert C. Tucker, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Appellants, Alexander and Jackson, appeal from their conviction upon counts 10, 12, and 13 of a 13-count indictment charging appellants and others with violations of the narcotic laws. All defendants waived jury trial and were tried by the court without a jury. Other defendants found guilty are not involved in these appeals.

Count 10 charged appellants and others with unlawfully carrying heroin from Chicago to St. Louis on November 11, 1955, in violation of 26 U.S.C. § 4724 (b). Count 12 charged appellants and others with concealing the same heroin as is involved in count 10 on November 11, 1955, in violation of 21 U.S.C. § 174. Count 13 charged appellants and others with conspiracy to violate the narcotic laws in violation of 18 U.S.C. § 371. The evidence supporting the charges will be discussed hereinafter.

Appellants, in substance, rely upon the following asserted errors for reversal:

1. Count 10 fails to allege the commission of an offense.

2. The evidence is insufficient to support a finding of guilty under counts 10, 12 or 13 as to either appellant.

3. The testimony of the witnesses, Dick and Costarelli, relating conversations by them with Robinson (1) out of the presence of Jackson and Alexander, (2) prior to the formation of the alleged conspiracy, (3) not in pursuance thereof, and (4) prior to the introduction of any evidence to establish a conspiracy, is inadmissible as to said appellants, and should have been stricken.

4. The chain of possession of the heroin exhibit has not been proven.

We shall consider the errors urged in the order above stated.

1. Count 10 properly alleges the commission of an offense. This count is based on 26 U.S.C. § 4724(b), which provides:

"Unlawful acts in case of failure to register and pay special tax * * * * * *

"(b) Transportation.—*Except as otherwise provided in this subsection,* it shall be unlawful for any person to send, ship, carry, or deliver narcotic drugs from any State, * * * into any other State * * *." (We do not set out the seven classes of persons exempted by the statute as it is obvious appellants do not fall within any of the excluded classes.)

■ Appellants contend that section 4724(b) is directed only against persons named in 26 U.S.C. § 4721, such as importers, manufacturers, and physicians, who may lawfully engage in narcotics dispensation. The words "any person" are used in a broad sense. Appellants' contention is wholly without merit. Nigro v. United States, 276 U.S. 332, 344, 48 S.Ct. 388, 72 L.Ed. 600; Taylor v. United States, 8 Cir., 229 F.2d 826, 834.

■ Appellants further contend that the indictment is fatally defective because it does not negative the exceptions of section 4724(b). Section 4724(c) provides:

"Provided further, That it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this subpart or sections 4701 to 4707, inclusive; and the burden of proof of any such exemption shall be upon the defendant."

Both 4724(b) and 4724(c) are parts of subpart C of the Internal Revenue Code of 1954. The above-quoted portion of 4724(c) decisively refutes appellants' contention. Appellants have offered no proof to establish that they fall within any exemption. See Nigro v. United States, 8 Cir., 117 F.2d 624, 629, 133 A.L.R. 1128.

2. Appellants, Alexander and Jackson, each moved for judgment of acquittal upon charges contained in counts 10, 12, and 13 of the indictment, at the close of the Government's evidence and again at the close of all of the evidence, upon the ground that the evidence offered was not sufficient to support a conviction. The trial court committed no error in overruling these motions.

■ It is the Government's theory that appellants aided and abetted defendant Robinson in the transportation and possession of the heroin, and that appellants conspired with Robinson and others to violate the narcotic laws. Evidence was introduced to support such contentions. There are many conflicts in the evidence. No purpose would be served by setting out all the conflicting evidence in detail. Upon these appeals we are required to view the evidence in the light most favorable to the Government.

Dick, a narcotic agent, established contact with the defendant Robinson on October 17, 1955. On that date no narcotics were acquired, but upon Dick's request for heroin Robinson put in a phone call, and later, appellant Alexander came to the bar which Robinson, Dick, and Taylor, another Government agent, were patronizing. Alexander came close to Dick's table, stared at him, had a conference with Robinson outside of the hearing of the Government agents, and left the premises without transacting any business. Subsequently, Dick made heroin purchases from Robinson on October 22, October 29, November 5, and November 11, 1955. Robinson lived in Chicago. The sales were arranged in the first instances by personal contact, and in the last two transactions by long distance phone call from St. Louis to Chicago. All deliveries were made by Robinson in St. Louis. The substantive offenses charged in counts 10 and 12 grew out of the November 11 transaction. At the time Robinson made the November 5 heroin delivery, negotiations were opened up for the purchase of a kilo

of heroin upon a quantity discount basis. Dick told Robinson that he would pay Robinson only after delivery and inspection in St. Louis. Robinson suggested Dick or his associate should meet Alexander to complete arrangements. This meeting never occurred. Robinson had stated that he was having difficulty obtaining a kilo without advance payment. Dick, on November 10, called Robinson at Chicago by telephone from St. Louis about obtaining delivery upon a kilo of heroin. Robinson advised that he would be able to get only four ounces which he could sell for $2,400, but that the balance of a kilo would be delivered later and Dick would be given the benefit of the kilo price. Upon Dick's acceptance of this proposition, Robinson advised that he would drive to St. Louis with two bodyguards to make delivery on the morning of November 11.

Helen Taylor, who roomed at Robinson's, testified that on the afternoon of November 10 Alexander delivered four packages of heroin, containing one ounce each, to Robinson; that Robinson made a partial deposit and told Alexander that payment for the heroin would be completed upon his return from St. Louis; that she tested the merchandise Alexander delivered and that it was heroin and that it was good. Helen Taylor also testified that after Robinson's arrest Alexander came to see her and was upset about Robinson's arrest, and that several days later Alexander complained about Robinson being arrested with $2,200 worth of Alexander's dope.

Robinson, accompanied by appellant Jackson and defendants, Coleman and DeCarlos, traveled from Chicago to St. Louis by car, carrying the four one-ounce packages of heroin. They arrived in St. Louis the morning of November 11. A gun was carried in the glove compartment of the car. Appellant Alexander did not make the trip to St. Louis. He did not take the stand to testify.

Dick testified that when Robinson appeared in St. Louis on the morning of November 11 to make the delivery, Dick questioned whether he could rely upon the assurance of Robinson and his associates that they would deliver the balance of the kilo of heroin at a reduced price. He then continued:

"Robinson called Ray Field Jackson out of the kitchen. Ray Field Jackson walked in to the front room. The three of us are present in the front room. Robinson again displayed that envelope that he had in his sports shirt pocket. He showed it to Ray Field Jackson and said, 'Here, I was just telling him about the stuff and about the four ounces and the price arrangements if we are being able to come up with the kilo less four ounces for a total price of $5,800, provided that Frankie buys these four ounces now for $2,400.' I said to Ray Field Jackson, 'Is that the financial understanding, the way you understand it?' He said, 'yes, that is right.' I said to Ray Field Jackson, 'I didn't expect any kind of deal like this and I feel like you are putting me at a disadvantage. How can I be sure if you quote a price you will stick with the price later on if I buy these four ounces?' and Ray Field Jackson said, 'don't worry about it, when I quote a price I know what I am talking about and the price sticks.'"

This testimony is denied by Jackson.

The defendants making the St. Louis delivery were arrested on November 11 and taken into custody. Robinson at the time of his arrest was in possession of four one-ounce packages of heroin.

Appellants urge that Helen Taylor's testimony is not entitled to credit because she was and had for twenty years been a drug addict. Helen Taylor had also been convicted of manslaughter. She was a roomer in defendant Robinson's home, and appellants urge that she must have been Robinson's girl-friend as she was without visible means of support.

It is undisputed that Helen Taylor is a drug addict. No question was raised as to her competency as a witness. The record shows that the court was fully

aware of all the facts above related. The trial court had an opportunity to observe Helen Taylor on the witness stand and in the court room. All of the matters urged by appellants were proper matters for the trial court to consider in determining the credibility of the witness. There were some inconsistencies in her testimony, but the same observation can be made as to some of the appellants' evidence.

In De Luna v. United States, 5 Cir., 228 F.2d 114, at page 116, the court, in speaking of the scope of review of a jury-waived criminal trial, states:

"* * * We think that the findings of the trial court should be reviewed to find whether they are supported by any substantial evidence. * * * The test is substantially the same as in reviewing the failure of the district court to direct a judgment of acquittal under Rule 29. * * * In each case the appellate court passes not on the weight of the evidence, but on a question of law. * * *" See also United States v. Owen, 7 Cir., 231 F.2d 831, 833.

■ In passing upon motions for acquittal in criminal cases, we have frequently said that we are concerned only with the question of whether there is substantial evidence tending to prove guilt beyond a reasonable doubt, and that it is not our function to pass upon the credibility of witnesses or to attempt to weigh the evidence and substitute our judgment for that of the trial court. Seals v. United States, 8 Cir., 221 F.2d 243, 248; Rollinger v. United States, 8 Cir., 208 F.2d 109, 111; Finnegan v. United States, 8 Cir., 204 F.2d 105, 114.

As to the substantive offenses, appellants urge that Alexander never left Chicago, and had no part in the transportation or concealment of the heroin; and that Jackson, although a passenger in the car transporting the heroin, is not shown to have had a part in the transportation or possession. Appellants rely upon United States v. Peoni, 2 Cir., 100 F.2d 401; Morei v. United States, 6 Cir.,

127 F.2d 827; and United States v. Moses, 3 Cir., 220 F.2d 166. The factual situations in the cited cases are clearly distinguishable from that present here. In the cited cases the court found that there was no pre-existing arrangement for participation by the vendor and the defendant, that defendant had no interest in the success of the vendor's venture, and that defendant did not participate in the criminal offense charged. In our present case the evidence supports a conclusion that appellants were actively associated with Robinson in the commission of the offenses charged. The fact-finder was warranted in determining that Alexander retained an interest in the heroin he left with Robinson, which was the heroin involved in the offenses charged.

The Government's position is that Alexander and Jackson aided and abetted Robinson in the commission of the offenses, and hence under 18 U.S.C. § 2, they are punishable as principals.

We believe that the court in United States v. Moses, supra, properly states the applicable law, as follows, 220 F.2d at page 169:

"It is to be noted that Section 2 of Title 18 describes two types of participants in criminal enterprises familiar to the common law: principals in the second degree, or aiders and abettors; and accessories before the fact, or those who counsel, command and procure the commission of crime. In legal analysis both types of wrongdoers are generally described as 'confederates' or 'intentional participants in a common design with a principal actor'. See Wharton, Criminal Law, 12th ed., Chapter IX, subheadings III and IV. The essential relationship in such cases has been stated by the Supreme Court in Nye & Nissen v. United States, 1949, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, adopting the language of Judge Learned Hand in United States v. Peoni, 2 Cir., 1938, 100 F.2d 401, 402: 'In order to aid and abet an-

other to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." ' "

There is ample evidence to support a conclusion that each appellant associated himself with the November 11 heroin venture, and that each sought by his action to make the venture a success.

Count 12 of the indictment charging concealing the heroin is based upon 21 U.S.C. § 174. This statute contains the following provision:

> "Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

In interpreting this statute the court in United States v. Cohen, 2 Cir., 124 F. 2d 164, at 165, states:

> " * * * Under the first statute we have quoted it was only necessary to show possession of the narcotics to establish guilt and under the second statute, making an abettor a principal, it was not necessary that each of the defendants should have had the narcotics, but only that one or more of them had possession while the others aided in the illicit transaction to which that possession was incidental. * * * " See also United States v. Chiarelli, 7 Cir., 192 F.2d 528.

■ The conviction on the substantive offenses charged in counts 10 and 12 is supported by substantial evidence. A careful examination of the evidence convinces us that there is also substantial evidence to support the conviction on count 13, the conspiracy count.

■ 3. Appellants complain that the court erred in not sustaining objections to evidence of Government witnesses as to statements made by the defendant Robinson, not in the presence of the appellants, prior to the formation and not in pursuance of the alleged conspiracy, and prior to the production of any evidence to establish conspiracy. A typical response of the court to the objections to this type of testimony is the following:

> "You had up the question, I believe at the time of adjournment, about whether or not you had shown enough. It seems to me, there being no jury in this case, if counsel would give the Court his assurance that he will develop the connection there would be no reason why I could not permit you to go ahead. With that assurance and that understanding the evidence will be stricken if you do not show it."

A motion was made at the close of the evidence to strike the testimony relative to statements made by Robinson. The court reserved ruling. It does not appear from the record that the court ever ruled upon the admissibility of the disputed testimony. It is not important for the purpose of reaching a decision in these cases to determine whether the foundation had been established for the admission of Robinson's statements as against the appellants. Robinson was also on trial. He did not object to the evidence. Such evidence was admissible as to the defendant Robinson.

■ In any event, we are convinced that there is ample competent evidence to sustain the conviction if the evidence objected to by appellants is excluded. Under such circumstances no prejudicial error exists. We emphasize that this is a nonjury case. In a jury case the receipt of testimony over proper objection, which is incompetent as to some of the jointly-tried defendants, might under some circumstances be prejudicial. See Delli Paoli v. United States,

77 S.Ct. 294. In Murray v. United States, 8 Cir., 117 F.2d 40, at page 45, a criminal case tried to the court without a jury, we found that there was ample competent evidence to sustain the verdict, and said:

"* * * Without this testimony there is ample competent evidence to sustain the conviction, and where a case is tried to the court without a jury, it is assumed that the court considered only competent and material evidence. * * *"

To the same effect see Tremont v. United States, 8 Cir., 65 F.2d 949. The same rule is applied in civil cases. Builders Steel Co. v. Commissioner, 8 Cir., 179 F.2d 377; Green v. Dingman, 8 Cir., 234 F.2d 547. In the Builders Steel Co. case, the court states, 179 F.2d at page 379:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellant court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. * * *"

Under the circumstances prevailing in these cases, we are convinced that no prejudicial error was committed in the reception of the evidence.

 4. Finally, appellants assert that the chain of possession as to the heroin involved in these cases was not established. This contention is without merit. Dick's testimony showed that he had possession of the heroin from the time it was taken from Robinson until he sent it in a sealed package by registered mail on November 14 to the Government chemist. The chemist testified he received the heroin by registered mail on November 17, and that he tested it and kept it in his possession in a vault until he brought it with him to produce at the trial. Dick identified the envelopes containing the heroin produced by the chemist at the trial as being the envelopes he took from Robinson and mailed to the chemist.

The appellants have failed to establish that the trial court committed any reversible error.

Affirmed.