Clifford **VALENTINE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 16546.

United States Court of Appeals Eighth Circuit.

Aug. 29, 1961.

Wilson Gray, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee, William H. Webster, U. S. Atty., St. Louis, Mo., on the brief, for appellee.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, hereinafter referred to as defendant, and thirteen others were charged in an indictment with the crime of conspiracy to violate Title 21, United States Code Annotated, Section 174. The indictment in part reads as follows:

"That from on or about August 1, 1958, and continuously and at all times thereafter, up to and including June 23, 1959, within the Eastern Division of the Eastern District of Missouri, and elsewhere, the defendants (names omitted) did willfully, knowingly, unlawfully and feloniously conspire, combine, confederate and agree with Otis Edwards, Minnie Stepter, also known as Minnie Taylor, Dorris Boyd, Chappell Monroe, Carril Johnson and Scott Westbrook, and they with each other and with divers other persons to the Grand Jury unknown, to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of narcotic drugs after being

imported and brought into the United States, knowing the same to have been imported and brought into the United States contrary to law, in violation of Title 21, United States Code, Section 174."

The indictment then sets out forty-two overt acts allegedly committed in furtherance of the conspiracy. As to the defendant Clifford Valentine the indictment alleged:

"1. During the course of the conspiracy the defendants Sylvester Stewart and Clifford Valentine would introduce, recommend and vouch for purchasers of bulk narcotic drugs to the defendants Perrin Stewart and Barbara Jean Taylor."

As to the overt acts of the defendant the grand jury charged:

"18. On some date during the month of December 1958, the exact date of which is unknown to the Grand Jury, the defendant Clifford Valentine by telephone did introduce and recommend Chappell Monroe to the defendant Barbara Jean Taylor for the purchase of narcotic drugs. * * *."

"32. On or about March 31, 1959, the defendant Clifford Valentine did make a telephone call to the defendant Barbara Jean Taylor in Chicago, Illinois and make the arrangements for purchase of narcotic drugs."

All of the defendants except Clifford Valentine and one Sylvester Stewart pleaded guilty. On trial defendant and Sylvester Stewart were convicted. From the judgment of conviction both of the convicted defendants appealed but the appeal of Sylvester Stewart was dismissed and we have before us only the appeal of Clifford Valentine. In the trial court he was permitted to defend in forma pauperis. On his application to appeal in forma pauperis the trial court entered an order permitting him so to do but later, however, entered an order denying his application to prosecute the appeal in forma pauperis on the ground that the appeal was frivolous. Thereaft-

er this court in effect allowed the appeal to be prosecuted in forma pauperis and appointed the same lawyer to represent him as had represented him in the trial court. The case was presented on an agreed statement as to the record made in the trial court, including the substance of the evidence submitted to the jury. The sufficiency of the evidence to sustain a verdict of guilty was challenged by motion for a directed verdict interposed at the close of all the testimony and was denied. The record is not clear as to the grounds on which defendant seeks reversal but we accept the statement of counsel for the government that the seven grounds stated in his motion to set aside the verdict are the grounds on which he seeks reversal. These grounds are as follows:

"1. The verdict of the jury was against the weight of the credible evidence.

"2. The verdict of the jury was against the law under the evidence as to all the essential elements of the offense as charged in the indictment inasmuch as the indictment was brought under Title 21, United States Code, Section 174, which title and section require the plaintiff to prove that the drugs were imported and that the defendant had knowledge of such importation, in cases like the one before this Court where the plaintiff does not allege nor offer any evidence that this defendant, at any time, had any such drugs in his possession or actually knew them to have been imported.

"3. For the reasons above stated, the Court erred in submitting the case to the jury and in overruling the defendant's motion to dismiss and discharge him at the close of all the evidence.

"4. The Court erred in giving and reading to the jury instructions one and two offered by the plaintiff in that said instructions were contrary to the law under the indictment and the evidence.

"5. The Court erred in refusing to give instruction Number One offered by defendant Clifford Valentine, as said instruction was a correct statement of the law.

"6. The Court erred in refusing to give instruction Number Two as offered by the defendant, as said instruction as offered was a proper and correct statement of the law under the indictment.

"7. The Court erred in permiting plaintiff's witness Renato Costarella to testify as follows: 'Defendant Clifford Valentine stated that he knew that defendant Perrin Stewart was a dealer in narcotics,' when at such time the plaintiff had established the Corpus Delicti of the offense as charged."

Inasmuch as the jury found defendant guilty we must take that view of the evidence most favorable to the jury's verdict. We must assume that the jury resolved all conflicts in the evidence favorable to the government, and the government is entitled to the benefit of all such favorable inferences as may reasonably be drawn from the facts proven, and if, when so viewed, there was a substantial question to present to the jury, then its verdict must be sustained. Alexander v. United States, 8 Cir., 241 F.2d 351.

As said by this court in Galatas v. United States, 8 Cir., 80 F.2d 15, 22, "Conspiracy is rarely susceptible of direct and positive proof, but it may be proven by circumstantial evidence." The Galatas case cites with approval Goode v. United States, 8 Cir., 58 F.2d 105; Cooper v. United States, 8 Cir., 9 F.2d 216; Smith v. United States, 8 Cir., 157 F. 721; Feigenbutz v. United States, 8 Cir., 65 F.2d 122. In Goode v. United States, supra [58 F.2d 107], it is said:

"The agreement need not be in any particular form, but it is sufficient that the minds of the parties met understandingly. A mutual implied understanding is sufficient so far as the combination or confeder-acy is concerned; and, in fact, the agreement is generally a matter of inference, deduced from the acts of the persons accused, which are done in pursuance of an apparent criminal purpose. It is not necessary to prove that the defendants actually agreed in terms to adopt the unlawful purpose and to pursue it by common means. A conspiracy is rarely susceptible of proof by direct evidence, but must be proved by circumstantial evidence. It may be deduced from the conduct of the parties and the attending circumstances."

In Cooper v. United States, supra [9 F.2d 224], it is said, concerning the offense of conspiracy:

"It is practically always established by circumstantial evidence, and this method in no sense amounts to the building of one presumption upon another."

In Smith v. United States, supra, [157 F. 728], it is said:

"The effects and results of a conspiracy can be observed and proved, but rarely can one get a glimpse or make proof of the secret conferences which inaugurate it. For these manifest reasons proof of a criminal combination to do an unlawful act can rarely be made except by light reflected from its consequences or results."

In Feigenbutz v. United States, supra [65 F.2d 124], this court, speaking through Judge Van Valkenburgh, said:

"Conspiracy is an offense which can ordinarily be established only by a great number of apparently disconnected circumstances. Necessarily the existence of the conspiracy in most cases can be made to appear only inferentially from the acts of the parties committed in furtherance thereof."

The Galatas case, supra, was not a narcotic case but the general law as to the proof of a conspiracy to commit a crime is applicable. What is said in

United States v. Bruno et al., 2 Cir., 105 F.2d 921, 922, is here apposite:

"Thus the conspirators at one end of the chain knew that the unlawful business would not, and could not, stop with their buyers; and those at the other end knew that it had not begun with their sellers. That being true, a jury might have found that all the accused were embarked upon a venture, in all parts of which each was a participant, and an abettor in the sense that the success of that part with which he was immediately concerned, was dependent upon the success of the whole."

The same doctrine is announced in United States v. Tramaglino, 2 Cir., 197 F.2d 928, 931, as follows:

"As these sales were illegal and clandestine, each supplier, through them, became himself a part of the conspiracy for their intended resale; this added element of personal lawbreaking and clandestine selling furnished the required 'stake in the success of the venture' that the Falcone case [2 Cir., 109 F.2d 579] demanded."

■ From the evidence introduced by the government the jury might well have found that defendant knew that Chappell Monroe wanted to go into the narcotic business, and he agreed to help him get the business started. He contacted a Chicago supplier by telephone and he took a trip from St. Louis, Missouri, to Chicago, Illinois, for the purpose of introducing his co-defendant to the supplier and obtaining a supply of heroin. On this trip narcotics were obtained from this source of supply and transported to St. Louis, Missouri. Later he made another telephone call from St. Louis to Chicago for the purpose of obtaining a supply of narcotics. As a result of these acts Chappell Monroe was enabled to make numerous purchases of heroin, one of which was on or about June 15, 1959, and part of this purchase was seized in possession of Chappell Monroe and was introduced into evidence as an Exhibit. This evidence, we think, made a submissible case from which the jury might determine the guilt or innocence of defendant.

■ The law as applied to a conspiracy involving violations of narcotic laws is somewhat broader than the general law of conspiracy. One of the leading narcotic conspiracy cases is United States v. Bruno, supra. In that case Bruno and eighty-six others, consisting of smugglers, wholesalers and retailers, were charged as conspirators. In United States v. Rich, 2 Cir., 262 F.2d 415, 418, following the Bruno case, supra, the court said:

"If there be knowledge by the individual defendant that he is a participant in a general plan designed to place narcotics in the hands of ultimate users, the courts have held that such persons may be deemed to be regarded as accredited members of the conspiracy."

This court, in Alexander v. United States, supra [241 F.2d 356], which was a narcotics conspiracy case, applied the test "that each sought by his action to make the venture a success."

Applying the rules of law that appear in the above cited cases to the facts in the instant case, we are of the view that the jury might well have found that the defendant, in order to assist and aid Chappell Monroe in starting into the narcotic business, made a telephone call to Chicago and a trip to Chicago, all for the purpose of purchasing narcotics to be brought back to St. Louis for sale and distribution; that to assure the continued success of the business defendant subsequently made another telephone call to Chicago for purposes of aiding Chappell Monroe in obtaining additional supply of narcotics; that one of these long distance calls was paid for by defendant and that he knew that Chappell Monroe was entering into a business that would be more or less continuous and that the success of this business depended upon both sellers and buyers of narcotics.

Defendant relies upon and cites in his brief the case of United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L. Ed. 128. The case is readily distinguishable from the case at bar. The Falcone case in effect simply holds that when a supplier sells goods which are subsequently used in an illicit enterprise, it becomes necessary to prove that the supplier has knowledge of the conspiracy to illegally use the goods. Here there was abundant proof to warrant the jury in finding that defendant had such knowledge.

The Supreme Court, in Direct Sales Co. v. United States, 319 U.S. 703, 63 S. Ct. 1265, 1269, 87 L.Ed. 1674, points out that,

> "The difference between sugar, cans, and other articles of normal trade, on the one hand, and narcotic drugs, * * * on the other, arising from the latter's inherent capacity for harm and from the very fact that they are restricted, makes a difference in the quantity of proof required to show knowledge that the buyer will utilize the article unlawfully."

In this connection attention is called to the provision contained in Section 174, Title 21, United States Code Annotated providing that,

> "Whenever on trial for a violation of this section, the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

As said in United States v. Cohen, 2 Cir., 124 F.2d 164, 165,

> " * * * it was not necessary that each of the defendants should have had the narcotics, but only that one or more of them had possession while the others aided in the illicit transaction to which that possession was incidental."

Manifestly, the possession of one conspirator was the possession of all.

It is noted that defendant argues that the court erred in entering the order denying his right to prosecute the appeal in forma pauperis. He was, however, permitted so to do by order of this court and in this state of the record the question has become moot, or at least academic.

Defendant has been ably defended by court-appointed counsel and has had a fair and impartial trial. The judgment appealed from is therefore affirmed.