**Charles Lee McINTOSH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17790.**

United States Court of Appeals
Eighth Circuit.

Feb. 24, 1965.

Rehearing Denied March 5, 1965.

Charles Lee McIntosh, pro se.

Donald A. Wine, U. S. Atty., Philip T. Riley and Jerry E. Williams, Asst. U. S. Attys., Des Moines, Iowa, filed printed brief.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

The defendant-appellant, Charles Lee McIntosh, was tried and convicted by a jury in the United States District Court for the Southern District of Iowa on an indictment charging him with violation of 18 U.S.C.A. § 2312.[1]  On August 6,

1. The indictment charged:
"That on or about the 7th day of November, 1961, Charles Lee McIntosh transported a stolen motor vehicle, to- wit: a 1959 International diesel tractor, VIN EF 3440G, in interstate commerce from Danville, Illinois to Granger, Iowa, in the Southern District of Iowa, and the

1964, he was sentenced to imprisonment for a period of four years. Thereafter notice of appeal was filed. On August 25, 1964, an order was entered by the trial court authorizing the appeal *in forma pauperis*.

The main question McIntosh raises here is whether the trial court erred in refusing to grant his motion for judgment of acquittal based upon insufficiency of the evidence, particularly in that he claims the government failed to establish that the tractor described in the indict-

ment, stolen in Indianapolis, Indiana, and identified in Des Moines, Iowa, was the one which the appellant wrecked near Granger, Iowa, on or about November 7, 1961.

■ We have examined the record in detail. It consists entirely of the government's case. The defendant did not testify and offered no evidence in his own behalf. He was represented by able, court-appointed counsel during the trial in District Court. On this appeal he appears *pro se*.[2]

said Charles Lee McIntosh then and there knew the said motor vehicle to have been stolen, in violation of Section 2312, Title 18, United States Code."

2. On January 21, 1965, long after this case had been briefed and submitted to this court (December 9, 1964), the appellant wrote a letter to the clerk of this court as follows:

"Dear Sir:

"This letter is an explanation for my unusual behavior in requesting that counsel be appointed to represent me on this appeal and my subsequent request that Mr. Roy W. Meadows, attorney, Des Moines, Iowa be dismissed from such representation.

"After due diligence, I have just learned that Mr. Roy W. Meadows was the United States Attorney for the Southern District of Iowa at the time my alleged crime was committed and that he was instrumental in securing the indictment against me. This was not made known to me at the time of trial. I might add that it seems highly improper for any attorney to represent both parties in the same litigation, especially in criminal cases. It would seem proper to call this matter to the attention of the Court.

"The enclosed documents (copies) are self explanatory.

"Please let me hear from you when a decision is reached in this matter.

"Again, my many thanks.

"Very truly yours,
/s/ Charles Lee McIntosh
Charles Lee McIntosh
Box P.M.B. 86819-A
Atlanta, Georgia."

The charge, if true, is a very serious matter. It has now been called to the attention of this court. While it is not made under oath and no attempt has so far been made to use it as a grounds for appeal, reversal, new trial or a motion

under § 2255, nevertheless, because McIntosh appears *pro se* we deemed it advisable to make inquiry. Charles Lee McIntosh is no stranger to courts and court procedure, particularly that of the federal system. His record is long and varied and includes confinement in and escape from a federal reformatory, confinement in United States Penitentiaries, interstate transportation of stolen aircraft as well as other motor vehicles, and escape from the United States Medical Center at Springfield, Missouri. He has been in and out of Federal District Courts on numerous occasions. He has participated in and been the appellant in United States Courts of Appeals in at least the following cases:

McIntosh v. Pescor, 6 Cir., 1949, 175 F.2d 95 (involving two appeals from the same judgment);

McIntosh v. United States, 8 Cir., 1949, 176 F.2d 514, certiorari denied, 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537;

McIntosh v. Steele, 8 Cir., 1950, 184 F.2d 721, certiorari denied, 340 U.S. 921, 71 S.Ct. 353, 95 L.Ed. 665;

McIntosh ex rel. McIntosh v. Steele, 8 Cir., 1950, 184 F.2d 723.

In all of these cases McIntosh has appeared *pro se* excepting the last numbered one wherein he was represented by his father, an active attorney. Presently McIntosh is confined in the United States Penitentiary at Atlanta, Georgia, as a result of a plea of guilty to a Dyer Act violation committed in Ohio on or about July 12, 1963, while he was a fugitive following forfeiture of his bond upon which he had been released after indictment and prior to trial in the instant case.

As a result of our inquiry, there has been filed with this court the affidavit of Roy W. Meadows, court-appointed counsel for McIntosh at the time of the trial

■ The evidence was mainly circumstantial. It must be considered in the light most favorable to sustaining the jury's verdict. All reasonable inferences flowing from such evidence and tending to support the verdict must be accepted as established. Glasser v. United States, 1941, 315 U.S. 60, 80, 62 S.Ct. 457, 86

in District Court. That affidavit we recite in full as follows:

*"AFFIDAVIT OF ROY W. MEADOWS*

"State of Iowa ⎫ SS.
Polk County ⎬

"I, Roy W. Meadows, being first duly sworn on oath do depose and state that I was Court-appointed counsel for Charles Lee McIntosh in the above-captioned matter for purposes of trial in the District Court.

"I have been advised that the appellant has stated that I was 'instrumental in securing the indictment' against him and desire to make the following statement regarding this allegation:

"That I was Acting United States District Attorney for the Southern District of Iowa until November 17, 1961, when Mr. Donald A. Wine was appointed; that the records in this case show that the complaint was filed on March 5, 1962 and that indictment was returned by the Grand Jury on March 23, 1962. That I had no knowledge of this case at any time as United States Attorney and that I had nothing at all to do with the Grand Jury which met in Des Moines on March 23, 1962, and that no investigative matters were brought to my attention while I was in the United States Attorney's office;

"That after Mr. Donald A. Wine was appointed United States Attorney, I was assigned as a special assistant to the United States Attorney for the purpose of handling the case of United States of America v. Harry Schroeder for a period of some six to eight months; that the Schroeder case involved civil litigation which I had handled as United States Attorney for over a year and that I had no connection with the office of the United States Attorney except in this one case;

"That I am informed that the files of the United States Attorney in this case show that the first report received from the F. B. I. was received on January 11, 1962 and is initialed by Donald A. Wine and no other individual, and that subsequent reports were initialed by Mr. Wine and Mr. Leo Gross and that my initials do not appear on any said reports; that it was customary for me to enter my initials on every report which I reviewed while in the United States Attorney's office;

"That I had no knowledge of this matter until appointed counsel by the Court in this case and that the defense afforded to appellant was my best effort and that the appellant so acknowledged to Judge Stephenson in open Court.

"Further affiant saith naught.

/s/ Roy W. Meadows
ROY W. MEADOWS

"Subscribed and sworn to before me by the said Roy W. Meadows this 4th day of February, 1965.

/s/ Philip T. Riley
NOTARY PUBLIC, in and for
Polk County         (Seal)"

An examination of the transcript indicates that originally a Judge of the District Court of the Southern District of Iowa first appointed Mr. Harley Whitfield, of Des Moines, to represent McIntosh. Subsequently Mr. Whitfield was relieved of the assignment because of another commitment. One of his associates and a member of his firm, Roy W. Meadows, offered his services instead. Judge Stephenson, who was then presiding, stated:

"The Court: Well, before I would make the change or make any change, I do—I think that Mr. McIntosh, not being from this area, should be informed, Mr. Meadows, that you were formerly, for seventeen years I believe, a member of the Federal Bureau of Investigation. You have been in the practice for many years now of course and, at one time you were, by appointment of this Court, acting United States Attorney for about a year.

"It is true that Mr. Meadows has appeared as counsel for the defense in several cases, Mr. McIntosh, but I do want you to have that background.

"Mr. McIntosh: Yes, sir.

"The Court: And I do now want to ask you what your preference is.

"Mr. McIntosh: I'm perfectly satisfied with Mr. Meadows, sir.

"The Court: Well, the Court is very familiar with the fact that Mr. Meadows is a very able attorney; very experienced in the practice of law. And he has vigorously defended cases in this court. And from the standpoint of experience, why I know that you are not suffering from the change in appointment, because Mr. Whitfield is an ex-

L.Ed. 680; Valentine v. United States, 8 Cir., 1961, 293 F.2d 708, 710; Blumen-field v. United States, 8 Cir., 1960, 284 F.2d 46, 52.

perienced lawyer but perhaps doesn't do as much criminal work.

"You are ready to proceed then with Mr. Roy Meadows as your counsel?

"Mr. McIntosh: Yes, sir, I am.

"The Court: All right. If you will enter an appearance then, Mr. Meadows.

"Mr. Meadows: Yes, sir, I have.

"Your Honor, I would like the record to show that I have informed the defendant, prior to the Court, of my background with the F.B.I. and as United States Attorney in this district, and at that time he indicated that he had no objection to that. And I think I have gone into greater detail of my background so that the defendant is aware of it.

"The Court: Well, I am not surprised that you have, but I just wanted to make sure the defendant was aware of it. Anyone who is a resident of this community, Mr. Meadows, and familiar with your trial work, would know that there is no prejudice involved in your being counsel for the defense, but I wouldn't want Mr. McIntosh to later learn this and think that the Court appointed someone whom he shouldn't.

"Mr. McIntosh: I have talked with Mr. Meadows and I'm satisfied he knows what he is doing.

"The Court: We'll then proceed. * * *"

At the conclusion of the trial, the return of the jury verdict of guilty, and the court's denial of Mr. Meadows' various post-trial motions made in behalf of McIntosh, and just prior to the sentencing, the following transpired:

"Mr. Meadows: Your Honor. I would like to make a statement on behalf of the defendant.

"The Court: Well, before I take up the matter of sentencing, I want to interrogate the defendant. He has filed one motion and had a judgment vacated. And I want to make sure before we take up this matter of sentencing—first of all, I want to ascertain, Mr. Defendant—Mr. McIntosh—the Court has heard these motions made by Mr. Meadows. The oral presentation, as far as the Court is concerned, indicates Mr. Meadows has worked on these motions and they were well presented. And the fact still remains that the Court wants to make sure that you are satisfied that your counsel has had sufficient opportunity and that this is your request that we proceed in this expeditious fashion.

"Mr. McIntosh: Yes, sir. I believe Mr. Meadows doesn't leave an awful lot to be said yet, sir.

"The Court: And you are satisfied that he has represented you ably prior to—that is, from the time of his appointment, during the trial, and in these post trial motions?

"Mr. McIntosh: Very much so.

"The Court: I want to make sure that you are satisfied and that you are also satisfied that sufficient time has been granted to you and to your counsel to present these motions to the Court, and it has been your request that they be heard today; is that correct?

"Mr. McIntosh: They have, sir.

"The Court: And you do now want me to proceed with sentencing?

"Mr. McIntosh: Yes, sir."

After the United States Attorney had reviewed for the court McIntosh's prior criminal record, Mr. Meadows spoke at length in behalf of McIntosh, urging leniency in making any sentence imposed to be served concurrently with that which McIntosh was then serving, and that the court make applicable the provisions of § 4208(a) of 18 U.S.C.A. When he had completed, the court asked McIntosh if he had anything to say in his own behalf, to which he replied:

"I'm afraid Mr. Meadows doesn't leave me very much to say.

"The Court: You are ready for the Court to proceed with sentencing?

"Mr. McIntosh: Yes.

"The Court: Everything has been said that you want said?

"Mr. McIntosh: Yes."

The court refused to accept Mr. Meadows' recommendation that any sentence imposed be served concurrently with the Ohio sentence but did accept his recommendation that § 4208(a) be made applicable so that McIntosh would be eligible for possible early parole.

We must conclude from the whole record, including the affidavit of Mr. Roy W. Meadows, that Mr. Meadows' court-appointment representation of the appellant was entirely ethical and completely proper in every respect; that the facts were fully and carefully explained to the appellant at the time Mr. Meadows was appointed; and that Mr. Meadows ably and conscientiously protected the appellant's rights throughout the trial in District Court and that no error exists with reference to such representation.

The evidence indicated and the jury was entitled to believe that on or about November 7, 1961, an International tractor and trailer unit was involved in a one-car accident near Granger, Iowa, at about 12:30 a. m. A witness, Gene Pion, was near the scene in his own car and noticed the tractor and trailer unit approaching an intersection at a high rate of speed. It proceeded through a stop sign, rolling over an embankment. Pion stopped his car and on investigation found the defendant McIntosh walking around the outside of the truck and an injured man, Willie Ayers, inside the cab. He talked with McIntosh, whom he assumed to have been the driver, and also with the injured man. He offered to get an ambulance and was told to do so. He left and drove into Granger, calling the Highway Patrol and an ambulance. Upon his return to the scene of the accident both men had disappeared. At the trial, Pion identified the defendant and Willie Ayers as being the two men he saw and talked to at the scene of the accident.

Willie Ayers testified, identifying himself as the party injured in the accident. He had been working with McIntosh and at the time had been asleep in the sleeper compartment of the cab behind the driver. He described the vehicle they were operating as a 1959 "Emeryville International" truck, driven by the defendant McIntosh. He had known McIntosh prior to this particular trip, having seen him with the same tractor some two or three weeks prior thereto in Florida and also in Georgia. He testified that after the accident the defendant McIntosh told him the "truck was hot" and to "get out". He did not remember getting out of the truck. He apparently was taken or somehow got to the Broadlands Hospital in Des Moines, Iowa, where he was confined for three to four weeks with a ruptured spleen. He also testified that McIntosh, on a prior trip, had told him, "Don't cross no scales" and that he, McIntosh, didn't want to go through Indianapolis.

Special Agent Maurice E. Murphy testified that he was notified by the Iowa Highway Patrol of a wrecked tractor at Owen Crist's lot in Des Moines, Iowa, and that on November 9, 1961 he examined the wrecked vehicle, which was locked in a garage adjacent to the office. He identified it as a 1959 International cab-over tractor bearing serial No. EF–3440G and as being red in color with a base coat of yellow. On examination of the interior of the cab he found a number of items identified as driver's logs, receipts, miscellaneous papers and a pair of shoes. These items were introduced as group Exhibit No. 1, and were itemized by the witness. A driver's log found therein indicated McIntosh as being the driver. It carried entries from October 13 to November 3, 1961, referring to numerous trips. There was also a driver's log for "W. Ayers". An envelope contained numerous receipts, contracts with transportation companies, highway permits, identification cards, variously made out to "McIntosh Trucking Service, Dayton, Ohio", "McIntosh", "Charles McIntosh, 4517 Wire Drive, Dayton, Ohio", "Charles L. McIntosh, 4517 Wire Drive, Dayton, Ohio", "Charles McIntosh, Dayton, Ohio", and "Charles Lee McIntosh, Route 1, Box 979, Ozark, Alabama". The papers were signed "Charles McIntosh" and "Charles Lee McIntosh". Defendant's objection to the receipt of Exhibit 1 was overruled.

Paul F. O'Brien, branch manager of the International Harvester Company at Indianapolis, Indiana, testified that his company was the owner of a 1959 International Harvester tractor serial No. EF–3440G and that such tractor had been stolen from their lot in Indianapolis, Indiana, between Saturday, October 7, 1961, at 4:00 p. m. and Monday, October 9, 1961, at 8:00 a. m. He testified that the stolen tractor had a value of $8,900; that it had been painted red by his company over the previous yellow. He further described it as a Model DCO [3]–405, of which there were others, such being

3. Diesel, cab-over.

a description of the model only, not an identification of the particular vehicle.

Special Agent Edward B. Hogan testified that he interviewed the defendant McIntosh on January 17, 1962, at the defendant's home in Dayton, Ohio, at which time he inquired of the defendant about a tractor with which the latter was involved in an accident in Iowa. McIntosh told him the tractor was a 1957 International Harvester leased by him from one Joseph Starr in Danville, Illinois, in late October 1961 and that it had been wrecked in Iowa. McIntosh exhibited and gave to Hogan a lease which he said covered the 1957 vehicle he claimed to have obtained from Starr and which he said was the vehicle he had wrecked in Iowa. The lease was dated September 2, 1961, and described a 1957 International, DCO–405–32 AF. (This is a description of the model only, not an identification symbol of that particular vehicle.) The lease was marked Exhibit No. 2 and was received in evidence over defendant's objection. McIntosh described for Hogan the person from whom he claimed to have leased the tractor as one he had probably called on long distance telephone on October 17, 1961, at either Danville, Illinois, or Penfield, Illinois.

Joseph Starr, of Penfield, Illinois, testified that he knew the defendant McIntosh as a trucker. His acquaintance with him was "casual". He had received a telephone call from McIntosh sometime in 1961. He stated that so far as he knew, he was the only Joseph Starr in Penfield, a town with a population of approximately 350. He denied having entered into any lease with McIntosh for any tractor of any kind and upon being shown the lease, Exhibit 2, denied its execution. He had examined the telephone book for Danville, Illinois, and found no one there by the name of Joseph Starr.

Defendant concedes that the evidence introduced by the government concerning the "1959 International serial No. EF–344OG" established that it had been stolen. He contends, however, that there was no evidence showing or tending to establish his possession of that particular vehicle and the interstate transportation thereof, citing Dixon v. United States, 8 Cir., 1961, 295 F.2d 396. He argues that the vehicle he was driving at Granger, Iowa, was not identified or connected by any evidence with the stolen vehicle set forth in the indictment. It is his position that there was no showing that the tractor examined at Owen Crist's garage by Special Agent Murphy, the concededly stolen vehicle, was the same vehicle driven by him and wrecked near Granger, Iowa, relying upon Cox v. United States, 8 Cir., 1938, 96 F.2d 41, 42; Tyler v. United States, 10 Cir., 1963, 323 F.2d 711, 712; and Thompson v. United States, 5 Cir., 1964, 334 F.2d 207, 209.

■ True enough, the evidence here was mainly circumstantial but we believe there was sufficient thereof from which the jury could draw the conclusions that the 1959 International tractor described in the indictment had been stolen; that the defendant had transported it in interstate commerce and was operating it at the time of the accident, and that at that time he knew it had been stolen. See Dixon v. United States, supra, 8 Cir., 1961, 295 F.2d 396.

■ That the tractor had been stolen from the International Harvester Company lot at Indianapolis, Indiana, was definitely established through O'Brien, International branch manager. Exhibit No. 1, consisting of the articles found by Agent Murphy in the stolen vehicle after it had been hauled in to Owen Crist's lot directly connects the defendant McIntosh with the stolen vehicle. Defendant argues that it was improperly received in evidence and that the items comprising Exhibit 1 were in no way connected to him, nor were they authenticated. The various items, carrying the name "McIntosh", "Charles McIntosh" and "Charles Lee McIntosh" and for the most part giving his address as Dayton, Ohio, together with the driver's logs for both McIntosh and Ayers, were all found in the truck's cab shortly after the occurrence of the acci-

dent. The government contends that the items in Exhibit 1 are not "documents" introduced as binding upon McIntosh but, rather, are "articles connected with the offense which are introduced as circumstantial evidence of appellant's possession of the tractor". As articles found in the stolen vehicle shortly after the accident, we find them properly admissible and they, together with other evidence, created a very strong inference that McIntosh had been an occupant of the stolen tractor and had failed to take his papers with him.

United States v. Angel, 7 Cir., 1953, 201 F.2d 531, was also a Dyer Act case. Among the articles found in the stolen car by the police were a suitcase belonging to the appellant, an automatic pistol found in the glove compartment, together with a certificate showing ownership in the appellant. There was objection to the introduction of the pistol, claiming that it had no connection with the crime and had an inflammatory effect on the jury. The court said at page 533 of 201 F.2d:

"As the government was putting in its proof, it had no way of knowing that Angel would take the stand. The automobile had been abandoned. None of the witnesses had seen the defendant in the car. It was an important part of the government's case to prove the defendant was in the stolen automobile prior to the time that it became mired on the side road. Defendant's suitcase, gun, or other belongings were material evidence to show that he had been in the stolen automobile, and that he and his companion had brought it across a State line."

Bayless v. United States, 9 Cir., 1952, 200 F.2d 113, rehearing denied January 9, 1953, certiorari denied, 345 U.S. 929, 73 S.Ct. 788, 97 L.Ed. 1359, was a case involving the robbery of a federally insured bank. The car in which the alleged robbers fled was identified by license number at the scene of the crime. Later the police found the car with the doors locked. After a forcible entry, they found, among other things, a shotgun, some shotgun shells, some other shells and a bank book with the name "John R. Bayless". The defendant objected to the admission into evidence of the shotgun, the extra shells and the bank book with his name on it. The trial court allowed this material into evidence and the appeals court said, at page 114 of 200 F. 2d:

"A sawed-off, loaded shotgun with extra shells and the bank book bearing appellant's name, both of which were found in the automobile as hereinbefore stated, were introduced into evidence. The shotgun was not used by the robber in the robbery and there was no further proof as to the bank book. Appellant claims prejudice. *Everything in the automobile was properly put into evidence in the case.* See People v. Mar Gin Suie, 1909, 11 Cal.App. 42, 103 P. 951; Pedersen v. United States, 2 Cir., 1921, 271 F. 187; United States v. Dalhover, 7 Cir., 1938, 96 F.2d 355 at 359. The point is without merit." (Emphasis supplied.)

See, also, Thogmartin v. United States, 8 Cir., 1963, 313 F.2d 589, 594, where evidence of defendant's business card was properly received into evidence to show the defendant's connection with the person in possession of stolen bonds.

Further evidence linking McIntosh to the stolen vehicle is not controverted, such as Special Agent Murphy's examination of the wrecked red over yellow 1959 International tractor serial No. EF–344OG in Des Moines on November 9, 1961, and Ayers' testimony that he was traveling in a red 1959 International tractor with McIntosh, who was driving, and that he had seen McIntosh with the same tractor for two or three weeks; and the driver's log with the name McIntosh in it disclosing entries from October 13th to November 3rd; O'Brien's testimony that his company owned an International Harvester tractor serial No. EF–344OG and that it was stolen from their lot between Saturday, October 7 and Monday, October 9, 1961, and that

the tractor was painted red over a base coat of yellow.

Ayers' testimony that he was traveling with McIntosh was confirmed by the witness Pion, who saw both Ayers and McIntosh at the accident scene. McIntosh also admitted to Special Agent Hogan that Ayers was with him.

Further circumstantial evidence of possession of the stolen tractor can be based upon the testimony of the witness Ayers that McIntosh "avoided Indianapolis" and "scales", that after the wreck had occurred, with Ayers injured in the cab, McIntosh told him the tractor was "hot" and that he had better "get out".

■ As to McIntosh having knowledge of the fact that the vehicle was stolen, his driver's log had entries from October 13th to November 3rd. O'Brien testified that the tractor was stolen between October 7th and October 9th. The trial court gave an instruction[4] to the effect that possession in one state of property recently stolen in another state, if not explained, is a circumstance from which the jury could infer that the person in possession of the property knew it to be stolen and caused it to be transported in interstate commerce. McIntosh objected to this instruction on the grounds that it violated his constitutional right not to appear and testify in his own behalf and that the instruction effectively deprived him of the constitutional presumption of innocence which surrounds all defendants in criminal trials. In Harding v. United States, 8 Cir., 1964, 337 F.2d 254, at 257, Judge Matthes, speaking for this court, said, in disposing of a similar contention:

"* * * When the court's charge in its entirety is accorded proper consideration in light of the

facts and circumstances, the challenged portions thereof are not vulnerable to the claim that the appellant's possession of the automobile created a presumption of guilt. Unlike Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), relied upon by appellant here, the trial court did not inform the jury that a presumption of guilt arises where one is in possession of recently stolen goods, but rather that the jury could draw an inference to that effect. Appellate courts have consistently sustained instructions similar to those given here as non-prejudicial. Bray v. United States, 113 U.S.App.D.C. 136, 306 F.2d 743 (1962); Battaglia v. United States, 4 Cir., 205 F.2d 824 (1953); Herman v. United States, 5 Cir., 289 F.2d 362 (1961).

"Neither did the charge have the effect of placing the burden on the defendant to prove his innocence. The jury was instructed on the presumption of innocence * * *. Contrary to appellant's contention, this burden was not shifted by the portion of the charge which only permitted, but did not require, the jury to infer from appellant's possession of the automobile that he had transported it in interstate commerce. * * *"

Taking the instructions as a whole, including the instruction which was given on the presumption of innocence, we find no error.

■ The appellant also objected to the introduction of Government's Exhibit 2, the purported lease of a truck from a Joseph Starr to "Charles McIntosh", on the grounds that the indictment charged

4. "If you find from the evidence beyond a reasonable doubt that the tractor described in the indictment was stolen, and was transported in interstate commerce as charged, and that, while recently stolen, the property was in the possession of the accused in another state than that in which it was stolen, the jury would be justified in drawing from those facts the inference that the tractor was transported or caused to be transported in interstate commerce by the accused with knowledge that it was stolen, unless possession of the recently stolen property by the accused in such other state is explained to the satisfaction of the jury by other facts and circumstances in evidence."

the interstate transportation of a 1959 International, whereas the lease showed a date of September 2, 1961, and dealt with a 1957 International truck. The alleged lease gave no serial number for the truck but carried the same model number as the stolen vehicle. The court received the exhibit on the ground that it was the same lease produced by defendant McIntosh and given to Special Agent Hogan, attempting to show that the truck he wrecked near Granger was a 1957 International leased from Mr. Starr. Starr denied that he had executed the lease of the truck as shown in Exhibit 2 and denied that the signature on the lease was his. Starr further testified that he did not own either a 1957 or a 1959 International truck. It is clear that Exhibit 2 was admissible and the jury was entitled to infer that the false explanation of possession of stolen property is circumstantial evidence that the defendant McIntosh knew the truck was stolen. Harvey v. United States, 1954, 94 U.S.App.D.C. 303, 215 F.2d 330 at 332:

> " * * * fabrication of evidence of innocence is cogent evidence of guilt."

Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Harris v. United States, 1948, 83 U.S.App.D.C. 348, 169 F.2d 887, certiorari denied, 335 U.S. 872, 69 S.Ct. 161, 93 L.Ed. 416. See, generally, 22A C.J.S. Criminal Law, § 663, p. 480.

■ The appellant also moved for a judgment of acquittal on the grounds that there was a variance between the indictment and the proof, in that the indictment charged interstate transportation from Danville, Illinois, while the evidence showed that the truck was transported from Indianapolis, Indiana. The motion for acquittal was overruled by the trial court on the basis that it involved a fact question for the jury. Special Agent Hogan testified that McIntosh had told him that the truck he wrecked was a 1957 International which he had leased from a Joseph Starr and

that he had picked it up "a short distance east of Danville, Illinois in the latter part of October, 1961." The jury was entitled to believe that the lease was actually non-existent but that McIntosh had indeed transported a 1959 stolen truck from Danville, Illinois, into Iowa.

We believe the defendant to have been fairly tried and that no prejudicial errors were committed.

Affirmed.